FRANCES JEAN BAILES

V.

CAROL ELAINE SOURS

Record No. 841885

March 7, 1986

Present: All the Justices

*James E. Wilcox, Jr. (Clayton & Wilcox*, on briefs), for appellant.
*Jean Harrison Clements (Gary V. Davis*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

This appeal involves a child custody dispute between the child's natural mother, Frances Jean Bailes (Jean), and his stepmother, Carol Elaine Sours (Elaine). The cause was heard initially in the Juvenile and Domestic Relations District Court of Loudoun County in February 1984, where custody of the child, Michael Sean Sours (Sean), was granted to Jean. Elaine appealed the decision to the circuit court where, in a trial *de novo*, the court heard the evidence *ore tenus* and awarded custody to Elaine in September 1984. Jean appeals.

The material facts are undisputed. In October 1971, Jean and Wayne Sours were married. Sean, their only child, was born on May 23, 1972. Jean and Wayne separated in June 1973, and Sean, 13 months old at the time, moved with his father to a separate residence.

After the separation, Jean sought Sean's custody by petitioning the Juvenile and Domestic Relations District Court of Fairfax County. By order entered February 24, 1974, the district court, with Jean's consent, awarded custody to Wayne. The court awarded Jean reasonable visitation rights, including the right to have Sean visit in her home on alternate weekends. Jean and Wayne were divorced on October 3, 1975; the divorce decree, however, contained no provision concerning Sean's custody.

Thereafter, on October 5, 1975, Wayne married Elaine, and a son was born to this marriage in December 1977. Similarly, Jean married James Bailes, and a son was born to that marriage in December 1977. Sean lived with his father and Elaine until

Wayne's death in July 1983, and he has resided with Elaine thereafter.

For the eleven months immediately following the separation, Jean and Sean visited on a regular basis. Jean testified, however, that when Sean was two years old "he started screaming that he didn't want to come [visit] with [her], so [she] never made him come." Wayne took the position that he would not force Sean to visit Jean against his will. Wayne repeatedly threatened to take Sean away and prevent Jean from seeing him if she tried to force the visits. When Jean would ask to see Sean, Wayne would tell her that her requested visits were causing Sean to "wet the bed" and to have "psychological problems." In any event, Jean's contact with Sean diminished appreciably over the years. Jean testified that Sean visited with her only "eight or ten" times during a nine-year period. Prior to Wayne's death, Sean's last visit in Jean's home was on his seventh birthday.

Sean has developed a close and loving relationship with his stepmother Elaine. Through the years, Elaine assumed the role of Sean's mother, and, indeed, he refers to her as his "mother." Sean's home with Elaine and his half brother is the only one he has known. Sean also has a close and affectionate relationship with Wayne's and Elaine's parents whom he sees frequently. They and Elaine lend support and stability to Sean's physical and emotional needs.

Since Wayne's death, Sean has talked with Jean on the telephone and has visited at Jean's home every other weekend. Neighbors testified that Jean and Sean display a good relationship during these visits. According to Elaine, however, Sean is reluctant to visit or talk with Jean.

Sean and his father enjoyed a very close relationship. He continues to mourn his father's death. The loss of his father and the custody dispute that began immediately thereafter have disturbed him a great deal. Sean has experienced bed wetting and has suffered from eczema; consequently, he has come under the care of a clinical psychologist.

The psychologist found that Sean was "very upset" over the prospect of leaving Elaine and living with Jean, and that Sean's bed wetting and eczema were directly related to his anxiety. Sean told the doctor that he would run away if he were forced to live with Jean, and the doctor opined there was a "good possibility that [Sean] would take [this] action."

In addition, the psychologist found that Sean experiences "tension . . . when he is with [Jean] and when he speaks to [her] on the telephone." The doctor concluded that forcing Sean to move to his mother's home would have an adverse, harmful impact on Sean and that remaining with Elaine was in his best interest. The doctor further stated that a change in Sean's custody would create more tension "until he could no longer tolerate the anxiety . . . [at which] point, he probably would explode." The psychologist did not rule out suicide, observing that Sean "has had fantasies of joining his father" in death.

The trial court examined Sean to ascertain his wishes in the matter. Sean told the court, as he repeatedly had told others, that he wished to remain with Elaine, stating, "she was his life."

The evidence established that both Jean and Elaine are fit and proper persons to have custody of Sean. Moreover, each is capable of providing him with a suitable home in a moral climate. Thus, Jean contends on appeal, as she did at trial, that because she is a fit and proper parent with a suitable home, the law presumes that her right to Sean's custody is superior to that of a non-parent's. Jean asserts that Sean's best interests, as a matter of law, will be served by awarding her custody.

Although the trial court recognized the presumption favoring a parent over a non-parent, it concluded that the presumption was neither "conclusive" nor "automatic." Additionally, the court found that the presumption had been rebutted "by clear, cogent and convincing evidence that the best interests of Sean demand that he remain in [Elaine's] custody."

In all child custody cases, including those between a parent and a non-parent, "the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute." *Walker* v. *Brooks*, 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962). In making this determination, the wishes of a child who has reached the age of discretion, though not controlling, should be considered and given appropriate weight. *Patrick* v. *Byerley*, 228 Va. 691, 695, 325 S.E.2d 99, 101 (1985); *Hall* v. *Hall*, 210 Va. 668, 672, 173 S.E.2d 865, 868 (1970); *Hepler* v. *Hepler*, 195 Va. 611, 620, 79 S.E.2d 652, 658 (1954).

It has been long recognized that "as between a natural parent and a third party, the rights of the parent are, if at all possible, to be respected, such rights being founded upon natural justice and wisdom, and being essential to the peace, order, virtue

and happiness of society." *Walker*, 203 Va. at 421, 124 S.E.2d at 198. Consequently, in a custody dispute between a parent and a non-parent, "the law presumes that the child's best interests will be served when in the custody of its parent." *Judd* v. *Van Horn*, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954).

■ Although the presumption favoring a parent over a non-parent is a strong one, it is rebutted when certain factors are established by clear and convincing evidence.\* *James* v. *James*, 230 Va. 51, 54, 334 S.E.2d 551, 553 (1985). We have held that such factors include: (1) parental unfitness, *Forbes* v. *Haney*, 204 Va. 712, 715-16, 133 S.E.2d 533, 535-36 (1963); (2) a previous order of divestiture, *McEntire* v. *Redfearn*, 217 Va. 313, 316, 227 S.E.2d 741, 743 (1976); (3) voluntary relinquishment, *Shortridge* v. *Deel*, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983); and (4) abandonment, *Patrick*, 228 Va. at 694-95, 325 S.E.2d at 101.

Finally, we have recognized a fifth factor that rebuts this presumption: a finding of "special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent, or parents." *Wilkerson* v. *Wilkerson*, 214 Va. 395, 397-98, 200 S.E.2d 581, 583 (1973); *see James*, 230 Va. at 54, 334 S.E.2d at 553; *Higgins* v. *Higgins*, 205 Va. 324, 330, 136 S.E.2d 793, 797 (1964).

■ When the court hears the evidence *ore tenus*, its findings are entitled to the weight accorded a jury verdict, and they will not be disturbed on appeal unless they are plainly wrong or without evidence to support them. *Gray* v. *Gray*, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985).

Jean argues that the evidence does not establish any of the five recognized factors that would have rebutted the presumption in her favor. She contends that the court merely found that placing custody with Elaine was in Sean's best interest. Considering the evidence relied upon by the trial court in reaching its determination, we can see no practical difference between the finding as stated by the court and a finding of "special facts and circum-

---

\*Jean concedes that the presumption in her favor is not conclusive. In *Williams* v. *Williams*, 192 Va. 787, 792, 66 S.E.2d 500, 503 (1951), and *Surber* v. *Bridges*, 159 Va. 329, 335, 165 S.E. 508, 510 (1932), we labeled the presumption a conclusive one. As the discussion which follows shows, that label is a misnomer. The presumption never has been treated as conclusive, and therefore, to the extent that *Williams* and *Surber* conflict with the recognized rebutting factors, they are overruled.

stances . . . constituting an extraordinary reason" for granting Sean's custody to Elaine.

Sean's contact with Jean has been so limited that it is fair to say she is virtually a "stranger to her son." *Patrick*, 228 Va. at 695, 325 S.E.2d at 101. On the other hand, Sean has known no other home than the one with Elaine and his half brother. The relationship Elaine and Sean have shared for nearly a decade has established strong ties of love and affection between them. Elaine has nurtured Sean as her son from infancy to adolescence. To Sean, Elaine *is* his "mother."

Additionally, Sean, a sensitive and intelligent child of 12 years at the time of the trial, expressed a strong desire to remain with Elaine, telling the court that "she was his life." More important, however, is the psychologist's conclusion that to transfer Sean's custody would have a "significant, harmful, long-term impact on Sean." Indeed, if Sean were forced to live with Jean, there is a reasonable likelihood he would run away, or possibly resort to more drastic measures.

█ The presumption in favor of a parent over a non-parent is a strong one, not easily overcome, and the result we reach here must not be construed to weaken it. In this case, however, the likelihood of inflicting serious harm to Sean is so clearly established by the evidence that the presumption favoring the mother is repugnant to the child's best interest. Clearly, Elaine has met the burden of rebutting the presumption with clear and convincing evidence of extraordinary circumstances.

In the face of such overwhelming evidence that changing Sean's custody would have such a devastating effect on his health and emotional stability, we cannot say that the trial court's finding is plainly wrong or without evidence to support it. Accordingly, we will affirm its decree.

*Affirmed.*