## CIRCUIT COURT OF WASHINGTON COUNTY

Danny Arnold

v.

Newberry

September 17, 1991

Case No. CJ91-08

By JUDGE CHARLES H. SMITH, JR.

This matter is before this court on appeal from an order of the Juvenile and Domestic Relations District Court granting visitation rights to the step-parent of the child in question. The natural father of the child, who now has custody, is opposed to this visitation and at the hearing conducted on July 29, 1991, made a motion to dismiss this action for lack of jurisdiction. The father places his reliance upon a strict construction of Section 16.1-241(A) of the Code and upon the recent Court of Appeals decision in the case of *Kogan v. Ulerick*, --- Va. App. ---, 405 S.E.2d 441 (1991.

The petitioner, on the other hand, relies upon the Virginia Supreme Court case of *Bailes v. Sours*, 231 Va. 96 (1986), and upon a broad construction of the above-referenced Code section, as well as several distinctions he makes between the *Kogan* case and the case at bar.

The *Kogan* case involved a petition for visitation filed by Mr. Ulerick for visitation rights with a child conceived and born during his marriage to the child's natural mother. It was later determined that the child was not his but was the result of an adulterous relationship Mrs. Ulerick was having with Mr. Kogan. Mrs. Ulerick subsequently divorced Mr. Ulerick and married the child's natural father, Jonathan G. Kogan. Mr. Ulerick was granted

visitation rights with the child. Upon proof that Mr. Kogan had denied him his visitation, he was convicted of contempt of court. While recognizing the tragic result, the Court of Appeals nevertheless reversed the trial court noting that it was without authority to order visitation for Mr. Ulerick.

The case at bar involves a petition for visitation filed by Danny Arnold seeking visitation privileges with his step-son, Paul Newberry, II. Mr. Arnold was married to the child's mother, and the child resided with them for some seven years prior to the mother's recent death. The respondent, relying upon the *Kogan* holding, contends that the death of the natural mother herein terminated the step-parent/child relationship and that, therefore, this court is without jurisdiction to award visitation to Mr. Arnold.

In the *Kogan* case, the Court of Appeals adopted the following definition of step-parent:

> The husband of one's mother by virtue of a marriage subsequent to that of which the person spoken of is the offspring.

Relying on that definition and § 16.1-241(A) of the Code, the Court of Appeals concluded that Mr. Ulerick was neither a parent, step-parent, grandparent nor otherwise related to the child and enjoyed no legal visitation rights with respect to the child.

Section 16.1-241(A) of the Code provides in part as follows:

> The authority of the juvenile court to adjudicate matters involving the custody, *visitation*, support, control or disposition of a child shall *not* be limited to the consideration of *petitions* filed by a mother, father or legal guardian but shall include petitions filed at *any* time by *any* party with a legitimate interest therein. A party with a legitimate interest shall be *broadly construed* and shall include, but not be limited to, grandparents and other blood relatives and family members . . . . In any decree involving visitation, the Juvenile and

Domestic Relations District Court may provide in such decree for visitation privileges for grandparents, step-parents or other family members. (Emphasis supplied.)

In my opinion that Code section, which is to be broadly construed, can certainly be interpreted as permitting the juvenile court to entertain and adjudicate petitions for visitation filed by any person with a legitimate interest. I wonder who could have a more legitimate interest in the care, custody and control of a child than one who was married to the child's mother at the time the child was conceived and born, stood *in loco parentis* to the child for a considerable period of time, and, by legal presumption, was the child's father. If I interpret the *Kogan* opinion correctly, it means that the term "party with a legitimate interest" cannot be construed broadly enough to include parties like Mr. Ulerick and must be confined to grandparents, step-parents and other family members, insofar as visitation is concerned. If that be so, then it must follow that Mr. Ulerick could have filed a petition for *custody* (as a party with a legitimate interest) and might even have been awarded *custody*, but he could never have his petition for *visitation* even entertained, much less be awarded visitation, because he could not qualify as a "party with a legitimate interest."

Counsel for the father herein contends that the same is true that just as the parent-child relationship was terminated by the dissolution of the marriage in the *Kogan* case *a fortiori* was the step-father/child relationship terminated here by the death of the natural mother.

I believe the respondent's reliance upon the recent *Kogan* case to support his theory in this case is misplaced. I believe the ruling in that case must be confined to the particular facts and circumstances of that case. I do not believe that case is controlling here for the following reasons:

(1) Even though referred to in *dicta* as such, the *Kogan* case clearly did not involve a step-father/child situation. By the Court of Appeals' own definition, Mr. Ulerick could not ever have been the child's step-father unless the natural mother divorced Mr. Kogan and remarried Mr. Ulerick. Mr. Ulerick, in fact, enjoyed no special

relationship with the child except by virtue of having been married to the child's natural mother and having the child live with him for a year. The petitioner in this case, on the other hand, clearly fits the adopted definition of a step-parent.

(2) In the *Kogan* case, the relationship between the petitioner and the child had existed for about one year, whereas the relationship of step-father/child in this case has continued for some seven years.

(3) In the *Kogan* case, whatever relationship that existed between Mr. Ulerick and the child was voluntarily terminated by the affirmative action of the natural mother of the child by divorcing Mr. Ulerick. In the present case, the natural mother died while still living with and married to the petitioner. This tragic event had no effect upon the relationship between the petitioner and his step-son. While the petitioner obviously does not have to get a divorce in order to remarry, he most likely still considers himself married to the child's mother and refers to her as his wife. Indeed, I have never heard a widow or widower refer to their deceased spouse as their ex-husband or ex-wife.

(4) In the recent case of *Shelton v. An Infant, etc.,* --- Va. App. ---, 406 S.E.2d 421 (1991), the Court of Appeals declined to acknowledge their adopted definition of step-parent. In that case, the court referred to the natural daughter of a divorcing couple as the "step-sister" of an illegitimate child of the mother who was conceived and born during her marriage. The court thereby inferred the existence of a step-parent/child relationship between that child and the *legal* father.

(5) Finally, and most importantly, I place my reliance here upon the Supreme Court's decision in the *Bailes* case noted above. That case has a factual situation very much like the one at bar. In that case, the Virginia Supreme Court recognized the continued standing of the step-mother, notwithstanding the death of her husband (the child's natural father) and affirmed the award of custody of the child to her over the protest of the natural mother. Indeed, the very first sentence of the *Bailes* case demonstrates the Supreme Court's conception of the relationship of the parties as it said:

This appeal involves a child custody dispute between the child's *natural mother* . . . and his *step-mother* . . . . (Emphasis supplied.)

For the foregoing reasons, I am of the opinion that the petitioner continues to be the child's step-father and that the Juvenile Court originally and this court on appeal have jurisdiction to entertain and adjudicate petitions for either custody or visitation filed by step-parents.