## CIRCUIT COURT OF THE CITY OF RICHMOND

Jeffrey Barker

v.

Angelina M. Barker

August 5, 1999

Case No. HK-196-A

BY JUDGE MELVIN R. HUGHES, JR.

There was a hearing last week on the parties' cross-petitions for the custody of two children, aged six and eight. After taking evidence, the court took the matter under advisement for two reasons: (1) to read the home study reports made available at the hearing and (2) to determine the law applicable to a contest between a nonparent and a parent for custody when there has been a previous determination of custody in favor of a nonparent who is not presently seeking custody.

Norma Walpole, the maternal grandmother, was given custody of the children (Christopher and Angelina) by order dated June 30, 1997. According to the evidence in the hearing before this court, Walpole wants to relinquish custody for health reasons. Deborah Hillis, her daughter, and Deborah's husband, Robert, ask that custody be awarded to them. Jeffrey Barker, the father, seeks custody. Thus, the question is, between the children's aunt and uncle and their father, which should have custody.

The home studies report favorable conditions in each household consistent with awarding custody to the Hillises or to their father.

In custody disputes involving a nonparent and a parent, the Virginia Court of Appeals has stated:

In all child custody cases, including those between a parent and nonparent, "the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute." *Bailes v. Sours*, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986) (quoting *Walker v. Brooks*, 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962)). In custody disputes between a natural parent and a nonparent, the law presumes the best interest of the child will be served when in the custody of the natural parent. *Id.* at 100, 340 S.E.2d at 827. Based on this presumption, "the rights of the [natural] parents may not be lightly severed but are to be respected if at all consonant with the best interest of the child." *Wilkerson v. Wilkerson*, 214 Va. 395, 397, 200 S.E.2d 581, 583 (1973). To overcome the strong presumption favoring a parent, the nonparent must adduce by clear and convincing evidence that: (1) the parents are unfit; (2) a court previously has granted an order of divestiture; (3) the parents voluntarily relinquished custody; (4) the parents abandoned the child; or (5) special facts and circumstances constitute extraordinary reasons to take the child from the parents. *Bailes*, 231 Va. at 100, 340 S.E.2d at 827; *see Smith v. Pond*, 5 Va. App. 161, 163, 360 S.E.2d 885, 886 (1987); *Ferris v. Underwood*, 3 Va. App. 25, 28, 348 S.E.2d 18, 19-20 (1986).

*Mason v. Moon*, 9 Va. App. 217, 220 (1989).

Thus, subject to exceptions, a parent comes to a child custody proceeding armed with a presumption that custody with the parent is in the child's best interests. Recognizing here that, in an earlier contest, the parent did not prevail against a nonparent, does the presumption apply in a later contest with a different nonparent? The authorities indicate the answer is in the negative. Indeed, according to *Mason v. Moon* the presumption does not apply or is rebutted when there has been a previous order of divestiture, which occurred here. Thus, the question becomes whose custody would better serve the best interests of the children.

In determining child custody, the court is required to "give primary consideration to the best interests of the child." Va. Code § 20-142.2(B). In light of this principle, the court decides to award custody to the maternal aunt and uncle.

Jeffrey Barker lives with his mother aged 64 and his father aged 75 at his parents' residence. Karen Oakley, with whom he is engaged to be married, lives with him at that residence. Jeffrey and Karen have a child, Nicholas, who was born on June 23, 1998, who lives in the household. Karen's daughter,

aged 7, by her marriage to a Mr. Van Dyke also lives in the home. Karen has two other daughters by her marriage, who live with their father in Michigan. Jeffrey and Karen expect that Karen's divorce from Van Dyke will be entered by the court on August 17, 1999.

Jeffrey is employed and only recently has paid $4,800 to clear a long standing arrearage for child support. Despite this payment, Jeffrey is still in arrears; he testified he can or will pay the remaining sum (about $450.00).

Jeffrey has had a considerable and long-standing problem with drugs. This problem was extant for most of time he was married to the children's mother, Janice, who, according to the testimony, had and continues to have a drug problem. This has contributed to Jeffrey accumulating a number of traffic offenses and a criminal record, including a felony conviction. However, Jeffrey testified he has turned his life around; he wants to marry Karen when her divorce is final and he wants to have his children with him in his household. Jeffrey loves his children and they have been with him often for visitation.

The Hillises have had custody since January 1999. They have been married for eleven years. They do not have children of their own. Bob has two grown children from a previous marriage. Christopher and Angelina are well mannered and attend school, and the Hillises monitor them in their assigned tasks. After school, the children have day care in a private residence three blocks away from home. Deborah testified that the children act differently when they come back after visitation. It takes some time to get the children settled into the Hillis household routine after the visits during which time there is some effort expended to what the court will call attitude adjustment. The Hillises are devoted to the children, are attached to them, and are eager to continue their custodial relationship. They both are employed outside the home.

When the comparison is made, as it must be, the Hillises made a stronger impression that the best interest of the children would be served by having custody remain with them. They have a settled home environment, have made appropriate provisions for the children's schooling and care. They have a stable relationship, are cooperative, and have a unified view in their approach to child rearing.

Jeffrey, on the other hand, is still laboring with the aftermath of years of drug addiction. Only recently, he testified, he has been "sober" for four months now. He is dependent on his mother and father for a home. While he hopes to be married soon to Karen, they have a young child to look after along with Karen's child. Jeffrey offered no evidence regarding plans for schooling and care after school. These circumstances have a direct bearing on Jeffrey's

ability to provide a stable home environment and to "meet the emotional intellectual and physical needs of the child." Va. Code § 20-124.3.

While the court is convinced that Jeffrey is not an unfit parent and that he has a deep affection for his children, one cannot be unmindful that Jeffrey sees in them a means by which he will achieve a measure of stability and security, things his former lifestyle did not accommodate. Jeffrey's life now is in a state of flux. Everyone is hopeful that Jeffrey will continue to keep his life on track. The court is unwilling to risk the welfare of the children on the hope that stability will be aided by their inclusion now in his household when the alternative with the Hillises is, by contrast, relatively safe, comfortable, and assured, considering all the relevant factors. See Va. Code § 20-124.3. For these reasons, the court will award custody to the Hillises.