COURT OF APPEALS OF VIRGINIA


Present:  Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


TERESA GIBSON

                                                        MEMORANDUM OPINION[*]
v.       Record No. 0180-11-4                           JUDGE SAM W. COLEMAN III
                                                        NOVEMBER 15, 2011
ELEANOR KAPPEL AND
 EUGENE KAPPEL


                    FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                                J. Martin Bass, Judge

            Anthony C. Williams (The Law Offices of Anthony C. Williams,
            PLLC, on briefs), for appellant.

            Mark C. Willis (Ricardo Rigual; Carolyn S. Seklii, Guardian *ad litem*
            for the minor child; Willis, Ashby & Rigual; Sullivan & Seklii, on
            brief), for appellees.


        Teresa Gibson (mother) appeals a December 27, 2010 decision by the trial court awarding

sole legal and physical custody of her minor child to Eleanor and Eugene Kappel (grandparents).

Mother contends the trial court was plainly wrong in failing to give due regard to the primacy of her

relationship with the child, as required by Code § 20-124.2(B), when it concluded the grandparents

demonstrated "by clear and convincing evidence, special facts and circumstances constituting an

extraordinary reason for awarding custody to a non-parent." We find no error, and affirm the trial

court's decision.

                                        BACKGROUND

        "When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences. That

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

principle requires us to 'discard the evidence' of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003) (citations omitted).

Mother and Michael Kappel (father) married in May 1999, separated on October 16, 2003, and divorced on June 6, 2005. The child was born in June 2001. On February 4, 2005, mother and father had entered into a property settlement agreement in which they agreed to shared joint legal custody of the child with father having primary physical custody.[1]

Prior to the mother's and father's separation, the child's grandparents saw the child weekly, including having her for some evening meals and holidays. When mother and father separated, the child was approximately fifteen months old. Initially, father hired a nanny for a few months to help with the child, during which time his family, including the grandparents, helped with the child. Father next enrolled the child in day care for the mornings, after which the grandparents would pick up the child at noon and care for her until her father returned from work around nine o'clock each evening. Also during this time, the child would spend the night with her grandparents, who provided for all of the child's needs: feeding, clothing, taking her to doctors' visits, enrolling and transporting her to extracurricular activities, and her potty training. The grandparents also had primary responsibility for managing the child's high cholesterol and eating problems. During this period, the mother visited the child either one or one and a half days each weekend.

When the child began school, the father informed the grandparents that their assistance in rearing the child was no longer needed because Crystal[2] could assume those child-rearing

---

[1] The Stafford County Department of Social Services (DSS) monitored the child's placement with father because in 1993 he had been convicted of felony child neglect due to the death of a child while in his care. After six months of monitoring, DSS determined that the mother's and the grandparents' contact with the child was sufficient to ensure the child's safety.

[2] Father began dating Crystal in 2004. She moved into his house with her three sons in the fall of 2004. Father and Crystal subsequently married.

responsibilities.  Grandmother suggested instead that the mother be given priority to care for the child, but mother responded that she did not want that responsibility because she "liked her life the way it was."  Even during this time, the grandmother remained actively involved in the child's life by taking her to the doctor, monitoring her nutrition, and volunteering at the child's school.

In the fall of 2007, the mother told the grandmother that the child had reported to her inappropriate sexual contact by one of Crystal's sons while the child was at the father's home.  On October 18, 2007, DSS filed a petition for a child in need of services (CHINS) pursuant to Code § 16.1-241(A)(1).  In addition to inappropriate sexual conduct, the investigation determined that Crystal had been using crack cocaine and father was aware of her drug use.  The same day that DSS filed the CHINS petition, the grandparents filed a petition seeking custody of the child.  On October 19, 2007, mother filed a motion to modify or amend the custody and visitation provisions of the divorce decree "to have any and all custody removed from [father]."  The Juvenile and Domestic Relations District Court for Stafford County (JDR court) adjudicated the child to be in need of services and, without objection from mother who was present at the hearing, awarded temporary custody to the grandparents.[3]  The grandparents have had primary physical custody of the child since October 22, 2007, during which time mother has had and exercised weekly visitations.

On May 27, 2009, the JDR court entered a final order granting joint legal custody of the child to mother and grandparents with primary physical custody to grandparents.  Mother and father appealed the JDR court's ruling.  The trial court heard evidence from numerous witnesses, including the mother, the grandparents, the child's therapist (Dr. June Wright-Good), and Kelly Savage (a licensed clinical social worker).

---

[3] Despite the fact that mother had indicated to CPS on October 18, 2007, that she was unable to care for the child, she requested at the October 22, 2007 hearing that the JDR court consider awarding custody to her.  However, she acknowledged at that hearing that she did not object to the grandparents being awarded custody of the child.

Dr. Wright-Good testified she had been treating the child since December 2007. She opined that the child suffers from adjustment disorder with depression. Dr. Wright-Good testified the child had a strong relationship with her grandparents, who are protective of her and who provide rules and structure for her. She explained the child did not have a strong relationship with mother and that mother "lacks the innate ability" to form a bond with the child. Dr. Wright-Good testified that in her professional opinion, the child suffered harm from her parents and "further harm . . . will come if either parent gets custody" of the child.

Savage testified on behalf of the mother. She acknowledged that she had met mother the day before the hearing and had never met the grandparents or the child. She testified that although she had not observed mother interact with the child, there was nothing in the transcripts, psychological evaluation or her observations of mother that indicated the mother could not form a bond with her child. Savage testified that the child's diagnosis of adjustment disorder with anxiety and depressed mood is a "catch all diagnosis" that is fairly common in children who are involved in custody disputes.

After a three-day hearing, the trial court entered an order December 27, 2010, which incorporated its November 30, 2010 opinion letter, and granted sole legal and physical custody of the child to the grandparents with supervised visitation for mother and father. This appeal by mother followed.

ANALYSIS

Mother contends the trial court erred in finding that special facts and circumstances existed which constituted an extraordinary reason for awarding custody to a non-parent and the

- 4 -

court was plainly wrong in not giving due regard to the primacy of mother's relationship with the child, as required by Code § 20-124.2(B).[4]

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990); see also Copeland v. Todd, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011); see also James v. James, 230 Va. 51, 53, 334 S.E.2d 551, 553 (1985) ("'[I]n custody . . . cases the welfare of the child is of paramount concern and takes precedence over the rights of parents.'" (quoting Malpass v. Morgan, 213 Va. 393, 399, 192 S.E.2d 794, 499 (1972))).

"As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Mother argues that as the child's parent and mother, she should be rearing the child, and she points to the parental presumption to support her argument.

"[I]n a custody dispute between a parent and a non-parent, 'the law presumes that the child's best interests will be served when in the custody of its parent.'" Bailes v. Sours, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986) (quoting Judd v. Van Horn, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954)). See also Code § 20-124.2(B) ("The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest.").

---

[4] Grandparents assert mother failed to preserve this issue and is procedurally barred from raising it on appeal. However, we find that mother preserved the issue in her objection to the December 27, 2010 custody order.

"Although the presumption favoring a parent over a non-parent is a strong one, it is rebutted when certain factors are established by clear and convincing evidence." Bailes, 231 Va. at 100, 340 S.E.2d at 827 (citing James, 230 Va. at 54, 334 S.E.2d at 553).

The Court has recognized the following five factors to rebut the presumption: "(1) parental unfitness; (2) a previous order of divestiture; (3) voluntary relinquishment; . . . (4) abandonment . . . [and (5)] a finding of special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent, or parents." Id. (internal quotations and citations omitted).

In reviewing these factors, the trial court stated,

> Neither parent is found today to be unfit, though each has demonstrated significant lapses in judgment in their interaction with [child] and neither has demonstrated consistent ability to address her physical and emotional needs over the years. Neither parent has voluntarily relinquished parental rights, nor abandoned the child, though each has clearly abdicated responsibility for the day-to-day care of the child, while grandparents have met those responsibilities.

As to the fifth factor, the trial court found that "special facts and circumstances [existed] constituting an extraordinary reason" to rebut the presumption favoring mother and to award sole physical and legal custody to the grandparents. Specifically, the trial court found that the grandparents had consistently over a considerable period of time addressed the day-to-day needs of the child while both mother and father "moved in their own directions, with new relationships, frequent relocations or changes in jobs and making decisions to move ahead to meet his or her own needs . . . ." Also of significant import, the court accepted the evidence of the child's therapist that the parents have caused harm to the child and she would suffer further harm if placed in the custody of either parent. Having concluded that mother demonstrated significant lapses in judgment, abdicated day-to-day child rearing responsibilities to the grandparents, failed to address the child's physical and emotional needs over the years, and that placing the child

with mother would cause further harm, the trial court did not err in holding that the grandparents had presented clear and convincing evidence to rebut the parental presumption.

"Once the presumption favoring parental custody has been rebutted, the natural parent who seeks to regain custody must bear the burden of proving that custody with him is in the child's best interests." Florio v. Clark, 277 Va. 566, 571, 674 S.E.2d 845, 847 (2009) (citing Shortridge v. Deel, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983)).

The trial court examined the factors of Code § 20-124.3 to determine that the best interests of the child would be met by awarding custody to the grandparents. The trial court considered the guardian *ad litem*'s opinion and noted that the parties could not communicate and reach agreements that were in the child's best interests. The trial court stated, "It is not desirable to create a potential for a power struggle by implementing a custodial arrangement that is premised on cooperation and communication where so little currently exists." The trial court found that "sole legal and physical custody is required in this case to minimize the impact of the parties' resentments, behavior and conduct on this child." While the mother argues that the evidence from several of her witnesses supports her contention that the child's best interests would be met by awarding custody to her, the trial court determines the weight to be given to the testimony of each witness. See Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). Here, the evidence is sufficient to support the trial court's ruling that custody with the grandparents was in the child's best interests.

As such, we affirm the decision of the trial court granting sole legal and physical custody of the child to the grandparents.

Affirmed.