UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and AtLee
Argued at Richmond, Virginia


SANDRA PERRY AND
 STERLING DELBRIDGE
                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 0856-18-2                      JUDGE RICHARD Y. ATLEE, JR.
                                                             FEBRUARY 19, 2019
ERIN SNIPES


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Michael P. Tittermary; John R. Working, Guardian *ad litem* for
the minor child (The Witmeyer Law Firm, PLC; Railside Law
Group, on brief), for appellants.[1]

No brief or argument for appellee.


This appeal concerns the Circuit Court of Hanover County's decision regarding the

custody of minor child K.S.  Appellants Sandra Perry, K.S.'s paternal great-aunt, and Sterling

Delbridge, K.S.'s father, filed petitions in the circuit court for custody of K.S.  After hearing

evidence, the circuit court awarded custody of the child to Erin Snipes, K.S.'s mother.  For the

following reasons, we affirm.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to Snipes, who prevailed

before the circuit court.  Surles v. Mayer, 48 Va. App. 146, 156 (2006).  So viewed, the record

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The child's guardian *ad litem*, John R. Working, joined the brief submitted by
appellants.  At oral argument, counsel for appellants yielded a portion of his time for the
guardian *ad litem* to argue before this Court.

reflects that K.S. was born in March 2015. There was an established history of Snipes failing to take adequate care of K.S. Before K.S.'s birth, both Snipes and Delbridge were addicted to and abusing heroin. When Snipes learned she was pregnant, she ceased using heroin. Nevertheless, when the child was born, he was exposed to Hepatitis C through Snipes and displayed signs of opioid withdrawal.

Perry, K.S.'s paternal great-aunt, has maintained a relationship with K.S. since he was born. In August 2015, Snipes and K.S. accompanied appellants' family on vacation. During this trip, several members of the family observed Snipes breastfeed K.S. despite having recently consumed alcohol. Out of concern for K.S., the family provided infant formula, which Snipes refused to use.

In November 2015, Perry began to care for K.S. regularly on weekdays when Snipes was at work. This arrangement lasted approximately ninety days, until Snipes ceased working at that job. In April 2016, Perry started caring for K.S. for longer periods of time. At points, Perry took care of K.S. for up to two weeks with no contact from Snipes. The following month, Snipes posted a photo of herself to social media showing her driving with K.S. on her lap, rather than restrained in a car seat.

Snipes, Perry, and Delbridge all filed petitions in the juvenile and domestic relations district ("J&DR") court in September 2016. Perry argued in her petition that the evidence established that Snipes is an unfit parent and that the evidence was sufficient to rebut the presumption that favors awarding Snipes, as the parent, custody of K.S. In January 2017, the J&DR court awarded Perry sole legal and physical custody of K.S., providing Snipes with supervised visitation. That order noted that Snipes had appeared impaired during visitations with K.S. and had tested positive for marijuana use in September 2016. Snipes appealed that decision to the circuit court.

From January through September of 2017, Snipes's contact with K.S. was "sporadic[,] with periods of no visitation" with K.S. She also failed to maintain consistent contact with Perry. The circuit court held a hearing in September 2017, after which Snipes attended all of her weekend visitations with K.S., although scheduling and interpersonal conflicts between Snipes and members of K.S.'s family hindered her regularly attending weekday visitations. Snipes's psychiatrist testified at trial that she administered regular drug tests and that Snipes had not tested positive for any non-prescribed substances[2] since September 2016. She also explained the challenges of addiction, not only the affliction itself, but also the difficulties of affording medication and treatment, and how that affected Snipes's actions.

Snipes gave birth to a second child in November 2017. Several days before the final circuit court hearing in January 2018, Snipes married Michael O'Hara, whom the circuit court noted was an honorably discharged veteran of the United States Marines. He had a stable job and no history of drug abuse. The circuit court found that Snipes and O'Hara's residence, owned by Snipes's grandfather, was suitable for K.S. and that Snipes was capable of caring for both children.

The circuit court, acknowledging that Snipes "engaged in misconduct that affected the Child at his birth and thereafter was neglectful of the Child's medical needs," nonetheless found that K.S. has not been "actually harmed" while in Snipes's care and that she "is currently capable of caring for the child" without supervision. It noted that although Snipes was "ill equipped for parenthood" when K.S. was born, she consistently visited with K.S. after the September 2017 hearing, and there were no additional reports of "misconduct, neglect or an unwillingness or inability to promote [K.S.'s] emotional and physical well-being." After considering the evidence

---

[2] Snipes was in treatment for her opioid addiction, and thus took either Suboxone or Subutex, along with anti-anxiety medication.

and arguments of counsel from the September 2017 and January 2018 hearings, the circuit court awarded custody of K.S. to Snipes. It also awarded visitation to Perry and supervised visitation to Delbridge. This appeal followed.

## II. ANALYSIS

Appellants argue that the circuit court erred (1) in finding that Snipes was a fit parent and that special facts and circumstances did not exist to rebut the presumption of awarding custody to Snipes; (2) in finding that K.S. had not been actually harmed in Snipes's care[3]; and (3) in awarding custody to Snipes. All three arguments are related and collectively challenge the sufficiency of the evidence supporting the circuit court's ruling.

In child custody cases, "the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute." Bottoms v. Bottoms, 249 Va. 410, 413 (1995) (quoting Bailes v. Sours, 231 Va. 96, 99 (1986)). "[I]n a custody dispute between a

---

[3] To understand this argument, it is first significant to note that the circuit court's application of an "actual harm" standard was based on inferences from unpublished cases, not established Virginia law. In its letter opinion, it cites only Brown v. Hawkins, 97 Va. Cir. 280 (2017), in which the Circuit Court of the City of Norfolk noted the dearth of published case law on what "special facts and circumstances" constitute "an extraordinary reason" in non-parent custody disputes that would rebut the presumption in favor of awarding custody to a child's parent. After a thorough analysis, it reasoned that an "actual harm" analysis applied. That case — which is not binding on this Court — infers from the non-parental visitation cases, as well as other related case law, that a court should consider the "actual harm" that a child has faced or may suffer in non-parent custody disputes.

We shall not address whether the circuit court erred in employing this standard. First, appellants do not question or advocate for or against the application of this "actual harm" standard. They argue only that that the facts here established actual harm to K.S. and that the circuit court erred in finding they did not. Second, although appellants presented evidence attempting to show that "special facts and circumstances" existed that rebutted the presumption of parental custody, some of which involved allegations of Snipes harming K.S., they made no specific argument regarding "actual harm" before the circuit court. Their written objections to the letter opinion also failed to include any argument that it erred in finding no actual harm. Third, to the extent this argument was preserved, it nonetheless falls within appellants' other assigned error that special facts and circumstances existed to rebut the presumption of parental custody. Because, as discussed *infra*, we owe substantial deference to the circuit court's recitation and interpretation of factual findings, we fail to see how we can find it erred as a matter of law in finding that such facts and circumstances did not exist.

parent and a non-parent, 'the law presumes that the child's best interests will be served when in the custody of its parent.'" Bailes, 231 Va. at 100 (quoting Judd v. Van Horn, 195 Va. 988, 996 (1954)). That presumption can only be overcome by a finding of clear and convincing evidence of certain factors, such as parental unfitness, voluntary relinquishment or abandonment of the child, or "special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent, or parents." Florio v. Clark, 277 Va. 566, 571 (2009) (quoting Bailes, 231 Va. at 100). Here, Perry argues that there was clear and convincing evidence establishing that Snipes was unfit and that other "special facts and circumstances," id., justified finding that the presumption was rebutted.

As an appellate court, we are bound significantly by the factual findings of the circuit court. "If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge." Joyce v. Commonwealth, 56 Va. App. 646, 664 (2010) (quoting Campbell v. Commonwealth, 39 Va. App. 180, 186 (2002)). Moreover, "[a]bsent clear evidence to the contrary in the record, the judgment of a circuit court comes to an appellate court with a presumption that the law was correctly applied to the facts." Damon v. York, 54 Va. App. 544, 555 (2009) (alteration in original) (quoting Bottoms, 249 Va. at 414).

Here, the circuit court made explicit factual findings in a letter opinion, from which it concluded that the presumption favoring a child's parent having custody had not been rebutted; thus, it awarded Snipes primary custody of K.S. Those factual findings are supported by the evidence. Although the record plainly reflects, and the circuit court acknowledged, that Snipes's parenting was at times disconcertingly flawed (and another fact-finder may have arrived at a different conclusion), the circuit court here concluded that Snipes's recent actions spoke to her now being able to parent K.S. Whether Snipes's fitness as a parent had meaningfully changed

- 5 -

over the course of the custody dispute is a fact-dependent matter over which reasonable minds could differ, which is exactly what requires that we, as an appellate court, affirm the circuit court's decision. See Brown v. Brown, 30 Va. App. 532, 538 (1999) ("As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal.").

The trial court is best equipped, particularly in heavily fact-dependent cases such as this, to make judgments on credibility and weigh the evidence. See Sutherland v. Sutherland, 14 Va. App. 42, 44 (1992) ("[O]n review the 'decision of the trial judge is peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record.'" (second alteration in original) (quoting Brown v. Brown, 218 Va. 196, 200 (1977))).

There is no indication that the circuit court misunderstood or misconstrued any facts key to its decision. Instead, it presented a clear-eyed account of Snipes's previous failings as a parent. Nevertheless, the circuit court found that the totality of the circumstances, considering Snipes's efforts to maintain her sobriety and otherwise improve her behavior, as well as her perceived success in fostering increased stability in her home life, spoke to her present readiness to assume responsibility for K.S. Snipes's prior misconduct was not sufficient to establish, as a matter of law, that she was unfit or that special facts and circumstances existed to justify awarding custody to a non-parent, and therefore did not rebut the presumption favoring parental custody. As such, we cannot say the circuit court erred in awarding Snipes custody of her child.

### III. Conclusion

We cannot say on appeal that there was not credible evidence to support the circuit court's finding that the totality of the evidence failed to rebut the presumption of awarding custody of K.S. to his mother, Snipes. Accordingly, we affirm that decision.

<u>Affirmed.</u>