# COURT OF APPEALS OF VIRGINIA

## Record No. 0060-25-2

MATTHEW MAY

v.

JENNIFER MAY

Present: Chief Judge Decker, Judges Ortiz and Callins

Argued at Richmond, Virginia

Opinion Issued May 19, 2026[*]

## FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge

Charles E. Powers (Alvin A. Lockerman, Jr.; Stiles Ewing Powers PC, on brief), for appellant.

Mary Elizabeth White (Shana Gertner, Guardian ad litem for the minor children; Law Offices of Mary Elizabeth White, P.C.; Shana Gertner, PLLC, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE DANIEL E. ORTIZ

This case arises from the circuit court's decree awarding joint legal custody and primary physical custody of two children to Jennifer May after her divorce from Matthew May. The children, M.M. and J.M., are Matthew's biological children, born from an extramarital affair, raised by Jennifer after Matthew obtained custody. On appeal, Matthew argues the circuit court erred by awarding Jennifer custody of the two children without sufficient evidence to rebut the presumption in his favor as the children's natural parent. Further, at oral argument, Matthew challenged the circuit court's lack of finding that the children would suffer actual harm unless Jennifer received custody. Given that Matthew's challenge to the actual harm issue is not preserved, and the record supports the circuit court's custody determination, we affirm the findings of the circuit court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Matthew and Jennifer married in 2008.[2] They had two children within the marriage; one in 2014 and the second in 2017. But during the marriage, Matthew had a years-long affair with Lana Capehart that bore two more children: M.M., born in 2014, and J.M., in 2018.[3] Lana initially had custody of M.M. and J.M., but after she developed a neurological impairment in 2019, Matthew obtained primary physical custody of the children by court order. Throughout Matthew and Jennifer's marriage, Jennifer was the primary caregiver to her biological children, but she additionally became the primary caregiver to M.M. and J.M. after Matthew gained custody, when M.M. was four and J.M. not yet one.

In 2022, Jennifer filed for divorce on the grounds of adultery, or alternatively, constructive desertion and mental cruelty. She sought sole legal and physical custody of her biological children, and temporary physical custody of M.M. and J.M. The circuit court entered a pendente lite order awarding Jennifer primary physical custody and joint legal custody of all four children. The court granted Matthew visitation with the children every other weekend, and one visit mid-week.

Jennifer separately petitioned for third-party custody of M.M. and J.M. under Code § 20-124.2 with Lana's agreement. Matthew argued that the circuit court lacked jurisdiction to

---

[1] "When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). Thus, we recite the facts in the light most favorable to Jennifer.

[2] The record here was sealed. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Pilenza v. Nelson Cnty. Dep't of Soc. Servs.*, 71 Va. App. 650, 652 n.2 (2020) (quoting *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017)).

[3] We use the children's initials to protect their privacy.

grant Jennifer custody of M.M. and J.M. because they were not her biological children. The court disagreed, finding that Jennifer had standing to pursue custody of M.M. and J.M. because she had a legitimate interest in their care.

Matthew counterclaimed for a divorce. He asked the circuit court to award him joint legal and primary physical custody of the parties' children, with visitation to Jennifer. He also filed for a protective order in the juvenile and domestic relations court against Jennifer on behalf of M.M. and J.M. He alleged discovering a bruise on one child after Jennifer spanked him. M.M and J.M. remained in his care until the investigation concluded, when the court dismissed the petition.

At the custody hearing, the circuit court heard testimony from the parties' friends and family. M.M. and J.M.'s biological mother, Lana, testified in support of Jennifer. She observed during her visits with M.M. and J.M. that they "love[d] and respecte[d]" Jennifer and that Jennifer taught them "honesty, respect, and responsibility." Since Matthew and Jennifer separated, Lana preferred that Jennifer raise the children.

Craig Clarke, a mutual friend of the parties, testified that Jennifer "treated [M.M. and J.M.] like her own." The two called Jennifer "mom." He also observed that all four children had "bonded fully as siblings and kind of have a close, effective relationship and view[ed] each other as brothers and sisters." Brianne Clarke, another friend, saw Jennifer with the children on a weekly basis and described her as "a very involved parent." M.M. and J.M. went to Jennifer for comfort and support.

Matthew's parents testified on Jennifer's behalf. Matthew's mother observed that Jennifer gave the children boundaries and structure, which helped them thrive. The children were respectful toward Jennifer, and she did not treat any of the four children differently.

- 3 -

Matthew's father agreed that Jennifer was a good parent to the children and that she disciplined them appropriately when needed, "to correct the child, not to punish them so much."

Jennifer testified that she came to think of M.M. and J.M. as her own with the assistance of counseling. She recalled that during the marriage, Matthew was only home with the children occasionally. He worked evening shifts, which left Jennifer to care for the children alone. He also engaged in many sporting activities, including golf trips with friends, and happy hour events with co-workers. Jennifer primarily scheduled the children's appointments and notified Matthew.

Jennifer agreed that Matthew had a relationship with all the children and was involved in their extracurricular activities. After Matthew and Jennifer separated, the children visited Matthew, but "struggled with the transitions." On several occasions, the children had tantrums while visiting Matthew, who responded by returning them to Jennifer. After visits, the children were "tired," "defiant," and had "a different demeanor." Jennifer found post-separation communication with Matthew "traumatic and exhausting."

Jennifer did not have custody of M.M. and J.M. after Matthew filed for a protective order. They returned to her the day the court dismissed Matthew's petition. They were excited to see her, and both told her that they had missed her. Jennifer testified that the children had exhibited anxiety and increased tantrums since their return.

Matthew acknowledged that Jennifer was supportive when he initially sought custody of M.M. and J.M. in 2019. He recalled that he took a more active role than Jennifer in parenting M.M. and J.M. when they first came to live with them. After Matthew and Jennifer separated, Matthew's initial visits with the children were difficult, but improved over time. The children ultimately enjoyed spending time with Matthew. He attended the children's extracurricular activities and as many doctor appointments as he could, making "every effort to spend time with

them." He asked Jennifer for additional time with the children, but his requests were met with "[m]ultiple denials and a lot of non-responses."

When the parties separated, Matthew initially rented a room in his neighbor's house. Jennifer allowed overnight visits for two children at a time, every other weekend. A few months later, Matthew moved to a one-bedroom apartment. Jennifer did not permit the children to visit overnight for lack of proper sleeping arrangements. The two resumed overnight visits after Matthew moved into a three-bedroom apartment.

The children's guardian ad litem (GAL) conducted interviews and home visits with the children at both Jennifer and Matthew's residences. She had no concerns with either home environment. The GAL recommended that the custody and visitation arrangement be the same for all four children, because they had been raised as siblings for four years. The GAL found that "differing their schedules [would] cause jealousy, sadness, and other negative feelings for the children." The GAL found that M.M. and J.M.'s separation from Jennifer after Matthew filed for a protective order negatively affected them. Thus, the GAL recommended that the existing custody and visitation arrangement remain in place. Specifically, the GAL recommended that the parties share joint legal custody over all four children, with Jennifer having primary physical custody during the school year, and regular visitation to Matthew. The GAL determined that the children were capable of an alternative arrangement during the summer and recommended that they spend alternating weeks with Jennifer and Matthew. The GAL also recommended that the parties engage with a co-parenting counselor.

After considering the evidence and the parties' arguments, the circuit court issued a letter opinion, in which it acknowledged the "relatively unusual circumstance where [Matthew] brought children from his adulterous relationship into the marital home," where Jennifer raised them. The circuit court acknowledged the presumption that "the child's best interests [would] be

served in the custody of the parent," Matthew. But it held that Jennifer rebutted this presumption through her willingness to raise and care for M.M. and J.M. as her own, which the circuit court found was an "extraordinary circumstance." It found Lana's endorsement of Jennifer significant. The circuit court considered the "special facts and circumstances" of the case and the factors under Code § 20-124.3 and determined that awarding joint custody rights to Jennifer would serve the best interest of the children.

The circuit court entered the final divorce decree, awarding Jennifer primary physical and joint legal custody of both her biological children and M.M. and J.M., with visitation to Matthew.[4] Matthew now appeals.

ANALYSIS

On appeal, Matthew argues the circuit court abused its discretion by awarding custody of M.M. and J.M. to Jennifer. He contends that the circuit court awarded custody to Jennifer without clear and convincing evidence to rebut the presumption that parental custody, with Matthew, would serve the best interest of the children. Further, at oral argument, Matthew raised the issue that the circuit court did not find the children would suffer actual harm unless Jennifer received custody.

We review custody and visitation matters for abuse of discretion. *Brandon v. Coffey*, 77 Va. App. 628, 635 (2023). The circuit court's factual finding is "entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." *Id.* (quoting *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022)). "So 'long as the evidence in the record supports' the circuit court's determination and it 'has not abused its discretion, its ruling must be affirmed on appeal.'" *Id.* (quoting *Rainey*, 74 Va. App. at 377). We review the circuit court's legal

---

[4] The final divorce decree also resolved the issues of divorce, equitable distribution, spousal support, and attorney's fees. None of those issues are challenged on appeal.

conclusions and questions of statutory and constitutional interpretation de novo. *Walker v. Commonwealth*, 74 Va. App. 475, 506 (2022).

A parent has a constitutional interest in "autonomy in child rearing." *Williams v. Williams*, 24 Va. App. 778, 782 (1997) (citing *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). But that right is not absolute. *Moore v. Joe*, 76 Va. App. 509, 517-19 (2023). By statute, a third party with "legitimate interest[s]," including a stepparent or former stepparent, may seek custody of a child over the parent's objection. Code §§ 20-124.1, -124.2. When determining custody between a parent and stepparent, the circuit court shall "give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody to any other person with a legitimate interest." Code § 20-124.2(B).

I. We cannot reach Matthew's challenge to the lack of an actual harm finding because it is not properly preserved.

To give due regard to the parent-child relationship, the "law presumes that the child's best interests will be served when in the custody of its parent." *Bailes v. Sours*, 231 Va. 96, 99 (1986). A stepparent may rebut the presumption in favor of the parent by presenting clear and convincing evidence that the child will be harmed because of: (1) parental unfitness, (2) a previous order of divestiture, (3) voluntary relinquishment, (4) abandonment, or (5) "special facts and circumstances" that constitute "an extraordinary reason for taking a child from its parent." *Moore*, 76 Va. App. at 519-20 (quoting *Bailes*, 231 Va. at 99). To accommodate the parent's constitutional interest in child rearing, the circuit court must make a finding of actual harm to the child's health or welfare before awarding custody to a stepparent. *Id.*

But this Court may only consider a challenge on appeal if it is properly preserved. Rule 5A:18. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause

shown or to enable this Court to attain the ends of justice." *Id.*; *see also Roberts v. Roberts*, 41 Va. App. 513, 525 (2003) (reasoning Rule 5A:18 barred consideration of the appellant's constitutional challenge to Code § 20-124.2). Furthermore, on brief, an appellant must list "the issue(s) on which the . . . court appealed from failed to rule," Rule 5A:20(c), and provide sufficient principles of law to support each assignment of error, Rule 5A:20(e). *See Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (applying Rule 5A:20(e)). We "will not consider a different ground of objection raised for the first time on appeal." *Milam v. Milam*, 65 Va. App. 439, 465 (2015) (quoting *O'Dell v. Commonwealth*, 234 Va. 672, 679 (1988)).

Matthew's challenge to the sufficiency of the evidence does not preserve the lack of an actual harm finding for this Court's review. Matthew did not raise the issue of actual harm until oral argument. He assigns error to the circuit court's award of custody to Jennifer based on insufficient evidence. He did not raise the issue of actual harm before the circuit court, nor on brief on appeal. To be sure, it appears that neither party argued below that the circuit court must, or should, find the children would suffer actual harm unless Jennifer was awarded custody rights, but "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his contention or merely constructs a skeletal argument, the issue is waived." *Bartley*, 67 Va. App. at 746 (alteration in original).

Given that Matthew did not argue below that the circuit court must make a finding that the children would suffer actual harm unless Jennifer were awarded custody before making the custody determination, that argument is waived on appeal. Thus, Rule 5A:18 prohibits us from considering his challenge now.

II. The circuit court did not abuse its discretion by finding that awarding Jennifer custody would serve the best interest of the children.

Once a petitioning stepparent produces clear and convincing evidence that a child would suffer actual harm unless the stepparent received custody, the circuit court may proceed to determine the custody arrangement according to the best interest of the child. *Moore*, 76 Va. App. at 518-19 ("The best interest of the child is only considered after a finding of actual harm."); *also see* Code § 20-124.3 (enumerating the factors the court shall consider in determining a child's best interest). After the petitioning stepparent has rebutted the parental presumption, "the natural parent who seeks to regain custody must bear the burden of proving that custody with him is in the child's best interests." *Florio v. Clark*, 277 Va. 566, 569, 571 (2009) (affirming an award of custody to a third party who acted as a "surrogate father" in the biological father's absence). "This subsequent best interest determination is made by the preponderance of the evidence." *Hawkins v. Grese*, 68 Va. App. 462, 484 (2018).

The record supports the circuit court's findings that Jennifer presented clear and convincing evidence of "special facts and circumstances" to rebut the parental presumption and that awarding Jennifer custody rights would serve the best interest of the children. Matthew acknowledges that Jennifer is a "person with a legitimate interest" under Code § 20-141.1, and indeed, although Matthew fathered M.M. and J.M. in an extramarital affair, Jennifer has cared for them as her own since they moved into the marital home in 2019. She continued to mother the two after she and Matthew separated, when Matthew left the marital home. She has sought therapy to strengthen the bond between herself and the children, and between the children and their siblings, treating M.M. and J.M. no differently than her biological children. M.M. and J.M. go to Jennifer for comfort and support—they call her "mom."

The GAL recommended that Jennifer retain primary physical custody over the children due to their close relationship with their siblings and emphasized that the custody arrangement

should be the same for all four siblings. Evidence at the custody hearing supported that recommendation. Separation from Jennifer and their siblings following Matthew's petition for a protective order distressed M.M. and J.M. The children's biological mother, Lana, had observed Jennifer's care for the children and advocated for Jennifer's custody. She arranged her visits with the children through Jennifer, not Matthew. Lana testified that Jennifer "is teaching them honesty, respect, and responsibility," and preferred the children stay with Jennifer.

Matthew's parents and family friends praised Jennifer's mothering of the children. Matthew's mother regularly observed Jennifer with the children during visits and when helping with transportation. She testified that Jennifer "gives those children boundaries" and "structure." She described that Jennifer raises M.M. and J.M. like "she considers it an honor." Matthew's father testified that he had not seen Matthew with the children in at least two years, but saw Jennifer with the children once or twice each week to babysit. He described Jennifer as very mature and under control, and noted, "[t]he kids are what they are because of her." Matthew's father summarized the children's relationship with Jennifer: "It's obvious they love their mother."

"So 'long as the evidence in the record supports' the circuit court's determination and it 'has not abused its discretion, its ruling must be affirmed on appeal.'" *Brandon*, 77 Va. App. at 635 (quoting *Rainey*, 74 Va. App. at 377). Here, the record supports the circuit court's findings that Jennifer rebutted the parental presumption through clear and convincing evidence of "special facts and circumstances" and that awarding Jennifer custody rights would serve the best interest of the children. Accordingly, the circuit court did not abuse its discretion by awarding Jennifer custody.

CONCLUSION

Given that Matthew did not preserve his argument that the circuit court failed to find the children would suffer actual harm unless Jennifer received custody, and the circuit court did not otherwise abuse its discretion by awarding custody to Jennifer, we affirm.

*Affirmed.*