Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Goodwyn, JJ., and Russell, S.J.

JOSEPH C. FLORIO                          OPINION BY
                                SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 081080                    April 17, 2009

BARBARA C. CLARK, ET AL.

            FROM THE COURT OF APPEALS OF VIRGINIA


     This is an appeal by a parent from an order awarding

custody of his child to non-parents.

                      Facts and Proceedings

     Applying familiar principles of appellate review, we will

state the facts in the light most favorable to the parties

prevailing in the trial court.  In January 1996, Mary Childers

gave birth to a child, Jacob Florio.  Jacob's biological

father was Joseph C. Florio, but the parents never married and

were separated by the time of Jacob's birth.  In April 1997,

the Gloucester County Juvenile and Domestic Relations District

Court (JDR court) entered an order that provided:  "By

agreement of parties, custody of the above named child is

hereby granted to his mother, Mary L. Childers.  Liberal

visitation to his father, Joseph C. Florio."  In July 1996,

when the infant was six months old, the mother and Jacob moved

in with the mother's sister, Barbara E. Clark and her husband,

William B. Clark.  Twelve months later, in July of 1997, the

mother, with Jacob, moved from the Clarks' home to live with

the mother's new boyfriend, who lived just "two cornfields" away from the Clarks.

During the next four years, the Clarks visited Jacob and his mother two to three times every week and took vacations together. Florio exercised his visitation rights infrequently during this period. He would state his intention to pick Jacob up, usually on a Sunday, but "most of the time he did not show up." During those years, William Clark acted as a surrogate father to Jacob, ensuring that he did his homework, taking him to sports activities and on trips, including his first visit to a dentist.

In 2001, Mary Childers developed serious heart disease and the Clarks assumed more of Jacob's day-to-day care. Jacob went back to live with the Clarks in January 2002 and his mother died two months later. Shortly before her death, Mary Childers executed a will in which she nominated her sister, Barbara Clark, as Jacob's guardian.

Two days after Mary Childers' death, without notice to the Clarks, Florio filed a petition in the JDR court for custody of Jacob. That court entered an order transferring custody to Florio, pendente lite. Joyce Childers, Jacob's maternal grandmother, and the Clarks, filed petitions for custody. The court appointed a guardian ad litem for Jacob and continued the case, ordering home studies, counseling for

Jacob, and a substance abuse evaluation of Florio. Florio had custody of Jacob for five months in 2002, during which the two of them lived in a trailer on Florio's mother's farm. Florio had no driver's permit during this time and Florio's mother and stepfather had to meet his and Jacob's needs for transportation.

In August 2003, the JDR court awarded Jacob's custody to the Clarks, ruling that Florio was not a fit person to have Jacob's custody. Florio appealed to the circuit court, which entered a final order on October 6, 2004, awarding custody to the Clarks. Florio appealed to the Court of Appeals, which, by unpublished memorandum opinion dated July 26, 2005, reversed the circuit court's judgment for error in the admission of evidence and remanded the case for further proceedings. The circuit court reheard the case on remand and entered a final order on September 3, 2006, awarding custody to the Clarks. Florio took a second appeal to the Court of Appeals, which affirmed the judgment of the circuit court by a divided panel decision. Florio requested a rehearing en banc, which was granted. The Court of Appeals, sitting en banc, approved the panel decision and adopted its majority opinion by order entered May 13, 2008, awarding custody of Jacob to the Clarks. We awarded Florio an appeal. With the exception

of the five-month period in 2002 mentioned above, Jacob has lived with the Clarks from January 2002 until the present.

## Analysis

The circuit court heard the evidence *ore tenus*. Its findings are entitled to the weight given to a jury verdict and will not be disturbed on appeal unless, upon a review of the whole record, they are plainly wrong or without evidence to support them. *Gray v. Gray*, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985). Code § 20-124.2(B) provides in pertinent part:

> In determining custody, the court shall give primary consideration to the best interests of the child. . . . The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest.

In *Bailes v. Sours*, 231 Va. 96, 340 S.E.2d 824 (1986), we set forth the principles governing a custody determination between a parent and a non-parent:

> In all child custody cases, including those between a parent and a non-parent, the best interests of the child are paramount and form the lodestar for the guidance of the court . . . .
>
> [I]n a custody dispute between a parent and a non-parent, the law presumes that the child's best interests will be served when in the custody of its parent.
>
> Although the presumption favoring a parent over a non-parent is a strong one, it is rebutted when

4

certain factors are established by clear and convincing evidence. We have held that such factors include: (1) parental unfitness; (2) a previous order of divestiture; (3) voluntary relinquishment; . . . (4) abandonment[; and (5)] special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent, or parents.

Id. at 99-100, 340 S.E.2d at 826-27 (citations and internal quotation marks omitted).

Once the presumption favoring parental custody has been rebutted, the natural parent who seeks to regain custody must bear the burden of proving that custody with him is in the child's best interests. See Shortridge v. Deel, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983).

Applying those principles to the record in the present case, we conclude that the trial court's judgment was supported by clear and convincing evidence sufficient to rebut the presumption in favor of the natural father, and that Florio did not carry the burden of proving that custody with him would be in the child's best interests. We find no merit in Florio's contention that the trial court applied an incorrect legal standard.

Among the factors considered by the trial court were the following:

(1) Florio had agreed to leave Jacob in his mother's sole custody during her lifetime and sought Jacob's custody for the

5

first time, after her death, when Jacob was six.  During those formative years, Florio showed little interest in Jacob, visiting him very rarely.

(2) Florio never paid any child support for Jacob, either during the six years Jacob was with his mother or during the subsequent years when Jacob was in the Clarks' custody.

(3) Florio has an extensive record of misdemeanor and traffic offenses from 1993 until 2001, including seven "drunk in public" convictions, three "driving under the influence" convictions, two other traffic infractions, one conviction each of "trespassing," "hit and run," and "obstructing a law enforcement officer by threat or force in the performance of his duty."  His driver's permit was suspended three times and ultimately revoked.

(4) Jacob has special needs, having been diagnosed by a clinical psychologist with attention deficit hyperactivity disorder and a learning disorder.

(5) At 39 years of age, Florio had no home of his own at the time of trial, residing with his father and stepmother. He was building a house for himself on his father's land but it was uncompleted.  He dropped out of high school in the 10th grade and never earned a G.E.D.  He worked with his father in a dog grooming and kennel business on his father's property. The trial court found that he had been "less than honest with

6

the IRS" and "less than forthright" with the investigators appointed by the court. Florio had no health insurance and provided none for Jacob. He has shown no ability to deal with Jacob's emotional, educational and health needs.

(6) The Clarks have supported and cared for Jacob continuously since 2002, providing him with a very good home. Both Clarks served in the U.S. Air Force and have college degrees. William Clark has a master's degree in business management and has worked continuously as an air traffic controller employed by the Federal Aviation Administration for 24 years. The Clarks have furnished Jacob with health insurance since 2002 and have been attentive to his emotional, educational and health needs.

It is clear that Florio has a very strong desire to have Jacob's custody and that father and son have an affectionate relationship. Florio has, according to the report of the guardian ad litem, "turned his life around" in recent years. Florio testified that he had attended many Alcoholics Anonymous meetings, had ceased drinking alcohol entirely, and had become religious. He had no record of criminal offenses after 2001.

At age 10, Jacob expressed a preference to live with his father, although he was fond of the Clarks and was relaxed, happy, and comfortable in their home. The guardian ad litem

was of the opinion that Florio was unfit as a custodian in 2001, but no longer unfit in 2006.  She recommended joint custody between Florio and the Clarks, but primary physical custody with the Clarks.  The trial court rejected that disposition because of strong animosity between Florio and the Clarks, and awarded custody to the Clarks with frequent, specified visitation to Florio.

## Conclusion

Even if we assume, without deciding, that no single factor outlined above would be sufficient to rebut the presumption in favor of the natural father, the totality of the record is sufficient to support, by clear and convincing evidence, the trial court's holding that the presumption was rebutted by "special facts and circumstances . . . constituting an extraordinary reason for taking a child away from its parent."  Bailes, 231 Va. at 100, 340 S.E.2d at 827.  After that holding, a clear preponderance of the evidence supports the conclusion that the child's best interests would be served by the disposition made by the trial court and affirmed by the Court of Appeals.  We will, therefore, affirm the judgment of the Court of Appeals.

Affirmed.