COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner


THERESA ANNA NICOLE BUFFINGTON

                                                  MEMORANDUM OPINION[*]
v.      Record No. 0771-11-4                              PER CURIAM
                                                    AUGUST 16, 2011
CHRISTOPHER BATES AND
 AUDREY BROWN


                  FROM THE CIRCUIT COURT OF CLARKE COUNTY
                          John E. Wetsel, Jr., Judge

              (Christine Mougin-Boal; J. Benjamin Dick; Ritenour Paice &
              Mougin-Boal, on briefs), for appellant.

              (Kelly C. Ashby; Peter W. Buchbauer; James J. McGuire;
              Lawrence P. Vance; Georgia Rossiter, Guardian *ad litem* for minor
              child; Buchbauer & McGuire, P.C., on brief), for appellee.


        Theresa Anna Nicole Buffington (mother) appeals an order awarding custody of her child to

Christopher Bates and Audrey Brown (collectively, the grandparents).[1]  Mother argues that the trial

court erred by (1) determining the parental presumption had been rebutted when there was no clear

and convincing evidence that the mother (a) was unfit, (b) had voluntarily relinquished custody of

the child, (c) had abandoned the child, and (d) that there were special facts and circumstances

constituting an extraordinary reason for taking the child away from mother; (2) failing to grant

mother's motion to dismiss and/or in the alternative, vacate, suspend or modify the juvenile and

domestic relations district court order of June 16, 2010 and reinstate the August 4, 2009 order where

the parental presumption had not been rebutted with clear and convincing evidence; and

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Audrey Brown is the mother's maternal grandmother and the child's great-grandmother, and Christopher Bates is the mother's step-grandfather and the child's step-great-grandfather.

(3) determining that the parental presumption had been rebutted and that pursuant to a best interest of the child analysis, custody should be granted to the child's great-grandmother and step-great-grandfather when the factors favored custody with the mother. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## BACKGROUND[2]

Since mother was nine years old, she lived with the grandparents.[3] She left their home when she was eighteen years old.

The child was born on March 16, 2008. At the time of the child's birth, mother was living with her mother and the child's father, Donald Ray Crawford, Jr.[4] Since the child was born, she visited with the grandparents almost every day at their farm. When the child was six months old, mother and the child started living at the farm with the grandparents. Before the child was fifteen months old, mother saw the child every day, and the grandparents were involved in the child's daily care.

---

[2] The following statements are based on the trial court's findings of fact. Mother disagrees with some of the trial court's findings. However,

> [w]hen reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences. That principle requires us to "discard the evidence" of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial.

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003) (citations omitted).

[3] Bates and Brown married on August 31, 2010.

[4] At trial, Crawford supported the grandparents' request for custody. The trial court awarded him visitation with the child as agreed upon by the grandparents and him.

In May 2009, mother filed a custody petition against Crawford. On August 4, 2009, the Clarke County Juvenile and Domestic Relations District Court (the JDR court) granted mother's request for sole legal and physical custody of the child.

When the child was fifteen months old, mother started staying out late at night, or staying out all night, and sleeping during the day. Mother would leave the child in the care of the grandparents. From the time that the child was sixteen months old until she was nineteen months old, mother left the farm, and the grandparents were solely responsible for the child. Mother would occasionally visit the child during this timeframe.

In October 2009, Bates drafted an agreement in which he agreed to pay the security deposit and rent for a townhouse for mother and, ultimately, the child, so long as mother spent "quality time with [the child] daily for the first few weeks in November while the child is still residing with [the grandparents] entirely." Then mother's time with the child would increase until the child was living with her. The agreement acknowledged that "the child has abandonment and other issues already with her mother," but the purpose of the agreement was "to help [mother] become a self supporting adult and a responsible parent." Mother and Bates signed the agreement on October 30, 2009.

On November 2, 2009, mother came to the farm in a rage. She was arrested, but returned later to the farm and took the child away from the grandparents. The grandparents filed petitions for custody. On November 17, 2009, the JDR court entered an order requiring mother to reside at her employer's house with the child and ordered visitation for the grandparents. On December 1, 2009, the JDR court expanded the visitation for the grandparents and placed additional restrictions on mother. The JDR court ordered a custodial evaluation and continued the matter. On February 24, 2010, the JDR court granted mother's request for a continuance, but transferred custody of the child to the grandparents pending the new trial date. On June 16, 2010, the JDR

court entered an order granting sole legal and physical custody of the child to the grandparents. The JDR court awarded weekly visitation to mother, but did not order overnight visitation. Mother appealed to the circuit court, which conducted a trial *de novo* on December 8, 2010.

On December 9, 2010, the trial court issued a nine-page document entitled "Findings of Fact and Conclusions of Law." The trial court ruled that the grandparents would have sole legal and physical custody, and mother would have visitation. Aside from supervised visitation in the summer, the trial court did not award overnight visitation to mother. A final order encompassing the judge's ruling was entered on January 19, 2011. Mother timely noted her appeal.

ANALYSIS

Custody to non-parents

Mother argues that the trial court erred by determining that the presumption that the child should be with mother was rebutted and that it was in the child's best interests to grant custody to the grandparents.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Mother argues that as the child's mother, she should be raising her daughter. She points to the parental presumption to support her argument.

"[I]n a custody dispute between a parent and a non-parent, 'the law presumes that the child's best interests will be served when in the custody of its parent.'" Bailes v. Sours, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986) (quoting Judd v. Van Horn, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954)). See also Code § 20-124.2(B) ("The court shall give due regard to the primacy

of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest.").

"Although the presumption favoring a parent over a non-parent is a strong one, it is rebutted when certain factors are established by clear and convincing evidence." Bailes, 231 Va. at 100, 340 S.E.2d at 827 (citing James v. James, 230 Va. 51, 54, 334 S.E.2d 551, 553 (1985)).

The Supreme Court has recognized the following five factors to rebut the presumption: "(1) parental unfitness; (2) a previous order of divestiture; (3) voluntary relinquishment; . . . (4) abandonment . . . [and (5)] a finding of special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent, or parents." Id. (internal quotations and citations omitted).

The trial court held that the grandparents rebutted the parental presumption by producing clear and convincing evidence that mother was unfit, she voluntarily relinquished the child to their care, and other special facts and circumstances.

The trial court held that mother was "not a fit parent, because she is unable to assess or meet [the child's] needs on a prolonged basis." Mother participated in a custodial evaluation, and Dr. Bernard Lewis, a forensic psychologist, testified that "her responses reflected clear evidence of, uh, significant underlying personality disorders, most likely with borderline and anti-social features." Dr. Lewis' concerns about mother's ability to care for the child were the "stability of home environment, stability of interpersonal relationships that [the child] would be exposed to, uh, and stability over the long run, her ability to just be a predictable, consistent parent who puts the child's needs above her own." In addition, Dr. Lewis stated that he had "serious concerns" about mother's ability to assess the child's needs. Dr. Lewis questioned mother's judgment, reasoning, and her maturity.

The trial court also held that mother voluntarily relinquished the child to the custody of the grandparents. The trial court pointed to the incidents when mother left the child with the grandparents for three months when the child was between the ages of sixteen and nineteen months, and when she signed the October 30, 2009 agreement. The October 30, 2009 agreement specifically states, "It is recognized by all parties that the child has abandonment and other issues already with her mother." The agreement further allows the child to remain in the care of the grandparents until mother can stabilize her situation and "re-establish an appropriate parental relationship with her daughter."

Lastly, the trial court cited to the special facts and circumstances associated with this case. The grandparents essentially raised the child since she was a baby. They have had custody of the child since February 2010. Both grandparents have a close relationship with the child and are able to assess the child's needs. Although mother loves the child, "she makes poor judgments." Mother is unable to adequately care for the child.

Therefore, contrary to mother's arguments, the trial court did not err in holding that there was clear and convincing evidence to rebut the parental presumption.

"Once the presumption favoring parental custody has been rebutted, the natural parent who seeks to regain custody must bear the burden of proving that custody with him is in the child's best interests." Florio v. Clark, 277 Va. 566, 571, 674 S.E.2d 845, 847 (2009) (citing Shortridge v. Deel, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983)).

The trial court examined, in detail, each factor of Code § 20-124.3 to determine that the best interests of the child would be met by awarding custody to the grandparents. On appeal, mother argues that the testimony from several of her witnesses supports her arguments that the child's best interests would be met by awarding custody to mother. However, a trial court can determine what weight to give to the testimony of each witness. See Street v. Street, 25

- 6 -

Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). Here, there was sufficient evidence to support the trial court's ruling regarding the best interests of the child.

### Mother's motion to dismiss

Mother also contends the trial court erred in dismissing her motion to dismiss. In her motion to dismiss, mother asked the trial court to "dismiss this cause and reinstate the Court's Final Order of August 4, 2009 as this Court's Final Order and to declare in so doing that Nikki Buffington's constitutional rights have been violated under the Fourteenth Amendment of the Federal Constitution."

"'[T]he right of the parents in raising their child is a fundamental right protected by the Fourteenth Amendment.'" Stadter v. Siperko, 52 Va. App. 81, 88, 661 S.E.2d 494, 498 (2008) (quoting Williams v. Williams, 24 Va. App. 778, 783, 485 S.E.2d 651, 654 (1997), aff'd as modified, 256 Va. 19, 501 S.E.2d 417 (1998)).

However, as noted above, the parental presumption can be rebutted and was done so in this case. We disagree with mother's argument that the trial court allowed "an improper custodial arrangement to stay in place." After hearing all of the evidence, the JDR court issued its June 16, 2010 order, which granted custody to the grandparents and visitation to mother. Mother appealed the JDR court order to the trial court. Code § 16.1-298 provides that the JDR court order shall remain in place pending the appeal. Accordingly, the trial court did not err in dismissing the motion to dismiss.

### Attorney's fees and costs

Both parties have requested an award of attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). On consideration of the record before us, we decline to award either party attorney's fees and costs on appeal.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>