COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Elder, Beales and Senior Judge Willis
Argued at Salem, Virginia


WESLEY L. WOODDELL

                                              MEMORANDUM OPINION* BY
v.       Record No. 2121-11-3                 JUDGE RANDOLPH A. BEALES
                                              NOVEMBER 20, 2012
SIMONE M. LAGERQUIST


           FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                          Victor V. Ludwig, Judge

           C. Lynn Lawson (Stephen K. Strosnider; Franklin, Denney, Ward &
           Lawson, PLC, on brief), for appellant.

           No brief or argument for appellee.


       In this proceeding involving child custody and visitation, the circuit court awarded full

physical and legal custody of the minor child T.R.W.[1] to Simone M. Lagerquist based upon the

circuit court's finding that Wesley L. Wooddell failed to prove by clear and convincing evidence

that he is T.R.W.'s biological father.  Given this finding, the circuit court also determined that

Wooddell is a "non-parent" of T.R.W. with no right of visitation.  On appeal, Wooddell argues

that the circuit court committed reversible error by disregarding the parties' signed

Acknowledgement of Paternity indicating that Wooddell is T.R.W.'s father.  Wooddell contends

that the Acknowledgement of Paternity, which both parties signed after the birth of the child,

remains binding because it was executed in the absence of fraud, duress, or a material mistake of

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We use the initials of this minor child and her sibling rather than their full names in an
attempt to better protect their privacy.

fact. We agree with Wooddell's argument, and, for the following reasons, we reverse and remand to the circuit court for proceedings consistent with this opinion.

## I. BACKGROUND

Wooddell and Lagerquist never married. They cohabitated for several years before ending their relationship in 2008. It is undisputed that they are both the biological parents of a son, G.L.W., who was born in January 2004. T.R.W., whose parentage is at issue in this appeal, was then born in September 2006.

At the time of T.R.W.'s birth, the parties signed a notarized Acknowledgment of Paternity indicating that Wooddell was T.R.W.'s biological father. Prior to signing, both parties were advised by the terms of this document of their rights and responsibilities pursuant to the document. For example, Wooddell was advised that his signature on the Acknowledgment of Paternity established that he was "the natural father of the named child for legal purposes" and that he would have "the responsibility to provide support for [the] child" until T.R.W. turned age eighteen. Furthermore, Lagerquist was advised that her signature on the Acknowledgement of Paternity indicated that "the person signing as the father is the biological father of the child" and, importantly for this case, that "the father has the right to request visitation with and custody of the child." Both parties were advised that, rather than signing the Acknowledgment of Paternity, they could instead seek the "advice or representation of counsel," "[r]equest that blood tests be taken," or "have the matter of paternity determined by the court."

After being advised of their rights and responsibilities, Wooddell and Lagerquist then signed the Parents' Acknowledgment, which stated:

> We, being duly sworn, affirm that we are the biological parents of
> the child named above, we have read and have been provided with
> an oral description of the rights and responsibilities statement
> provided in Part V of this document, and we request that the
> father's information be shown on this child's birth certificate and

- 2 -

that the child's name be listed on the birth certificate as shown below.

Child's Name: [T.R.W.]

Moreover, although the Acknowledgement of Paternity plainly provided that the parties reserved "the right to rescind this acknowledgment within sixty days from the date of signing," neither Wooddell nor Lagerquist sought to have the Acknowledgment of Paternity rescinded in this manner.

T.R.W.'s birth certificate listed Wooddell as her father,[2] and Wooddell held himself out as the father of both G.L.W. and T.R.W. Both children were given Wooddell's surname, and Wooddell claimed both children as dependents for income tax purposes and testified that he obtained health insurance for them.

When the parties' relationship ended in 2008, custody and visitation of the children was first litigated in the juvenile and domestic relations district court (JDR court). It does not appear that Wooddell's standing to obtain custody or visitation rights to T.R.W. was ever challenged in the JDR court. The JDR court awarded Wooddell primary physical custody of both children, awarded both parties shared legal custody of the children, and awarded Lagerquist visitation rights.

On appeal to the circuit court for a trial *de novo* in March 2010, Lagerquist asserted for the first time in the court proceedings that Wooddell was not actually T.R.W.'s biological father. Lagerquist moved for a continuance of the circuit court trial "so as to give time for an approved DNA test" of T.R.W. and Wooddell. Over Wooddell's objection, the circuit court granted Lagerquist's motion for a continuance and ordered that genetic testing be conducted before proceeding with the trial.

---

[2] G.L.W.'s birth certificate also listed Wooddell as his father. G.L.W.'s parentage is not at issue here, as noted *supra*.

- 3 -

In a letter opinion dated February 8, 2011, the circuit court described the testimony relating to T.R.W.'s parentage and the documentation of the court-ordered genetic testing, which was admitted into evidence at trial. The circuit court noted that Lagerquist and another man both testified that this other man – and not Wooddell – was T.R.W.'s biological father, but the circuit court also noted that this other man was not a party to the proceedings and apparently had never petitioned for a declaration of T.R.W.'s paternity. The circuit court also stated that the results of the genetic testing did not support Wooddell's claim that he was T.R.W.'s biological father. Observing that it was faced with an unusual set of circumstances, the circuit court found:

> Given all of the evidence, the Court cannot find, by clear and convincing evidence, that [Wooddell] is the father. However, while the Court will not find that he is the father, I specifically do not make a conclusive finding that he is not (leaving that determination to another proceeding).

The circuit court emphasized that a conclusive determination of T.R.W.'s paternity was "simply not ripe for determination" because the putative biological father was not a party to the proceedings. However, in finding that the evidence failed to show clearly and convincingly that Wooddell was T.R.W.'s biological father, the circuit court found that "the case becomes one of a parent" (i.e., Lagerquist) "against a person whom the Court does not find to be a parent" (i.e., Wooddell) "and the custody and visitation of [T.R.W.] must be judged on that basis."

Given the circuit court's description of the changed posture of this case, which suddenly left Wooddell a legal stranger to T.R.W., the circuit court awarded Lagerquist sole legal and physical custody of T.R.W. and did not award Wooddell any right of visitation – even though, until that point, Wooddell had been considered T.R.W.'s father, had provided for her since her birth, and had been her primary caretaker since at least the issuance of the JDR court's custody order in July 2009. As to G.L.W., whose parentage was not at all implicated, Wooddell was

awarded primary physical custody, with Lagerquist receiving visitation rights. The circuit court remarked:

> I understand that the result is that the children are divided, and I am not happy with that result. Were the circumstances different, I might have awarded primary physical custody of [T.R.W.] to [Wooddell], but with more expansive visitation to [Lagerquist] for both of the children than was provided by the J&D Court. Under the circumstances, the Court could only do that if it were willing to ignore the law in order to achieve a more satisfactory result.

In a subsequent letter opinion dated September 8, 2011, the circuit court acknowledged that neither party was content with the ruling in its earlier letter opinion. Whereas Wooddell challenged the circuit court's ruling that he failed to prove he was T.R.W.'s parent, the circuit court noted that Lagerquist sought a more conclusive legal determination that settled the issue of T.R.W.'s paternity. The circuit court reiterated that "evidence concerning paternity was before the Court only for the purpose of determining Wooddell's standing as a parent or non-parent in his pursuit of custody of [T.R.W.], and, for that purpose, in light of the conflicting evidence presented, he did not successfully persuade the Court that he was a parent."

At the circuit court's direction, Wooddell's trial counsel drafted a statement of facts and incidents of the circuit court trial in lieu of a transcript. The draft statement of facts circulated to Lagerquist's trial counsel[3] indicated:

> Counsel for Mr. Wooddell proffered that both parties had executed the Acknowledgment of Paternity in the hospital upon the birth of both children which has the same legal effect as a judgment entered pursuant to Section 20-49.8 of the Code of Virginia. [Wooddell's counsel] treated [Lagerquist's] Motion for Continuance and Paternity Test as a Motion to disestablish paternity or set aside paternity. Counsel argued that Ms.

---

[3] William W. Little II, Esq., represented Lagerquist in the circuit court. After Lagerquist prevailed below, Little filed a motion to withdraw in the circuit court indicating that Lagerquist was aware that he had agreed to represent her only at trial and not on appeal to this Court or the Supreme Court. The circuit court granted Little's motion to withdraw, and no pleadings have been filed on Lagerquist's behalf in this Court.

> Lagerquist lacked standing to set aside the determination of paternity and that she was required to prove . . . that the statement resulted from fraud, duress or material mistake of fact in accordance with Virginia Code Section 20-49.1.
>
> *    *    *    *    *    *    *
>
> *There was no evidence that the Acknowledgment resulted from fraud, duress or material mistake of fact. . . .*

(Emphasis added).

Lagerquist's trial counsel never objected to this italicized language from the draft statement of facts, although her counsel did object to two other portions of the statement of facts. The circuit court entered an order amending and approving the draft statement of facts, in light of Lagerquist's objections, without altering the language emphasized above in any way.[4] Accordingly, the final statement of facts approved by the circuit court indicates that there was no evidence that the parties' Acknowledgement of Paternity was signed due to fraud, duress, or a material mistake of fact, which is, therefore, now the record on appeal.

## II. ANALYSIS

Under settled principles, this Court views the evidence in the record on appeal in the light most favorable to Lagerquist, who prevailed in the circuit court. Florio v. Clark, 277 Va. 566, 568, 674 S.E.2d 845, 846 (2009). The circuit court's factual findings will not be disturbed on appeal unless they were plainly wrong or without evidence to support them. Id. at 570, 674 S.E.2d at 846. However, this Court reviews the circuit court's conclusions of law – including its interpretation of statutes – *de novo*. Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003).

---

[4] Lagerquist's trial counsel then endorsed this order as "seen and generally objected to," thereby giving no indication to the circuit court that the italicized language should not be part of the statement of facts for any reason. See, e.g., Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 927 (2000).

On appeal, Wooddell raises six assignments of error, but, given our holding, we need only squarely address Wooddell's second assignment of error in this opinion. Wooddell's second assignment of error contends that the circuit court erred "in requiring Wooddell to prove paternity through genetic testing" despite the existence of the signed Acknowledgment of Paternity, which operated as a legal judgment.

A.  THE INTERACTION BETWEEN CODE § 20-49.1 AND CODE § 20-49.10

As the circuit court recognized, this matter involves the interpretation of two related statutes – Code § 20-49.1 and Code § 20-49.10. "'[W]henever a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each.'" Wilson v. Commonwealth, 58 Va. App. 513, 519, 711 S.E.2d 251, 254 (2011) (quoting Boynton v. Kilgore, 271 Va. 220, 229, 623 S.E.2d 922, 927 (2006)). Accordingly, we must read and construe Code § 20-49.1 and Code § 20-49.10 together in order to give both statutes their full meaning, force, and effect as intended by the General Assembly. Id. at 519-20, 711 S.E.2d at 254.

Code § 20-49.1(B)(2)

Code § 20-49.1 states, in pertinent part:

> B. The parent and child relationship between a child and a man may be established by:
>
> 1. Scientifically reliable genetic tests, including blood tests, which affirm at least a ninety-eight percent probability of paternity. Such genetic test results shall have the same legal effect as a judgment entered pursuant to § 20-49.8.
>
> 2. *A voluntary written statement of the father and mother made under oath acknowledging paternity and confirming that prior to signing the acknowledgment, the parties were provided with a written and oral description of the rights and responsibilities of acknowledging paternity and the consequences arising from a signed acknowledgment, including the right to rescind.* The acknowledgement may be rescinded by either party within sixty days from the date on which it was signed unless an administrative

- 7 -

or judicial order relating to the child in an action to which the party seeking rescission was a party is entered prior to the rescission. *A written statement shall have the same legal effect as a judgment entered pursuant to § 20-49.8 and shall be binding and conclusive unless, in a subsequent judicial proceeding, the person challenging the statement establishes that the statement resulted from fraud, duress or a material mistake of fact.* In any subsequent proceeding in which a statement acknowledging paternity is subject to challenge, the legal responsibilities of any person signing it shall not be suspended during the pendency of the proceeding, except for good cause shown. Written acknowledgments of paternity made under oath by the father and mother prior to July 1, 1990, shall have the same legal effect as a judgment entered pursuant to § 20-49.8.

3. In the absence of such acknowledgment or if the probability of paternity is less than ninety-eight percent, such relationship may be established as otherwise provided in this chapter.

(Emphasis added).

Here, the relationship between Wooddell and T.R.W. was established under the procedure set forth in Code § 20-49.1(B)(2) when Wooddell and Lagerquist signed the Acknowledgement of Paternity for T.R.W. This document was

[a] voluntary written statement of the father and mother made under oath acknowledging paternity and confirming that, prior to signing the acknowledgment, the parties were provided with a written and oral description of the rights and responsibilities of acknowledging paternity and the consequences arising from a signed acknowledgment, including the right to rescind.

Code § 20-49.1(B)(2). Lagerquist has never asserted that the Acknowledgment of Paternity was anything other than a voluntary written statement of paternity under Code § 20-49.1(B)(2), and she did not seek to rescind the Acknowledgment of Paternity within sixty days of signing it (or at any time prior to the circuit court proceedings here), as was required under Code § 20-49.1(B)(2) and under the terms of the parties' Acknowledgment of Paternity for T.R.W.

The plain language of Code § 20-49.1(B)(2) states that a voluntary written statement of paternity executed pursuant to that statute "shall have the same legal effect as a judgment entered

pursuant to § 20-49.8 and *shall be binding and conclusive unless, in a subsequent judicial proceeding, the person challenging the statement establishes that the statement resulted from fraud, duress or a material mistake of fact.*" (Emphasis added). Although Code § 20-49.1(B)(2) was not originally written in such a manner, a 1997 amendment to the statute added language creating the "binding and conclusive" effect of a voluntary statement of paternity – absent fraud, duress, or a material mistake of fact.

## Code § 20-49.10

In 2001, the General Assembly enacted Code § 20-49.10, which is entitled "Relief from legal determination of paternity." Code § 20-49.10 states:

> An individual may file a petition for relief and, except as provided herein, the court may set aside a final judgment, court order, administrative order, obligation to pay child support or any legal determination of paternity if a scientifically reliable genetic test performed in accordance with this chapter establishes the exclusion of the individual named as a father in the legal determination. The court shall appoint a guardian ad litem to represent the interest of the child.[5] The petitioner shall pay the costs of such test. A court that sets aside a determination of paternity in accordance with this section shall order completion of a new birth record and may order any other appropriate relief, including setting aside an obligation to pay child support. No support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for relief from a determination of paternity, but only from the date that notice of the petition was served on the nonfiling party.
>
> A court shall not grant relief from determination of paternity if the individual named as father (i) acknowledged paternity knowing he was not the father, (ii) adopted the child, or (iii) knew that the child was conceived through artificial insemination.

---

[5] We find no indication in the record before us that a guardian *ad litem* was appointed to represent T.R.W.'s interests at any point during the circuit court proceedings.

- 9 -

Accordingly, Code § 20-49.10 permits a circuit court in appropriate circumstances to set aside a legal determination of paternity if scientifically reliable genetic testing excludes "the individual named as a father in the legal determination."[6]

B. ACKNOWLEDGEMENT OF PATERNITY REMAINED "BINDING AND CONCLUSIVE" HERE

The circuit court construed Code § 20-49.1(B)(2) and Code § 20-49.10 to be in tension with each other. The circuit court found that, "even given an acknowledgment (and even with its effect as a judgment)" under Code § 20-49.1(B)(2), "Code § 20-49.10 provides a review (apparently without regard to the issue of *res judicata* or the finality of judgments)." However, no such tension exists under the facts of this case.

"When faced with apparently conflicting statutes," courts must apply "a well-established principle of statutory construction." Boynton, 271 Va. at 229, 623 S.E.2d at 927. "'If possible, we must harmonize apparently conflicting statutes to give effect to both.'" Id. (quoting Phipps v. Liddle, 267 Va. 344, 346, 593 S.E.2d 193, 195 (2004)). "We accord each statute, insofar as possible, a meaning that does not conflict with any other statute." Ragan v. Woodcroft Village Apts., 255 Va. 322, 325, 497 S.E.2d 740, 742 (1998). Courts must always "'ascertain and give effect to the intention of the legislature.'" Travelers Prop. Cas. Co. of Am. v. Ely, 276 Va. 339, 344, 666 S.E.2d 523, 526 (2008) (quoting Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003)).

Code § 20-49.1(B)(2) plainly states that a voluntary statement of paternity executed under that statute has "the same legal effect as a judgment entered pursuant to § 20-49.8 and *shall be binding and conclusive unless, in a subsequent judicial proceeding, the person challenging the statement establishes that the statement resulted from fraud, duress or a material*

_____

[6] For purposes of this opinion, we will assume without deciding that the circuit court correctly interpreted Code § 20-49.10 as being "apparently sex-neutral, so that a mother could be the petitioner" under this statute, as is the situation before us here.

*mistake of fact.*"  (Emphasis added).  In light of this plain language from Code § 20-49.1(B)(2), the circuit court clearly erred when it required *Wooddell* to prove, by clear and convincing evidence, that he was T.R.W.'s father.

Indeed, when this custody and visitation matter reached the circuit court, the parties had already long ago executed an Acknowledgement of Paternity, and neither party had sought to rescind it within the sixty days of signing it, as permitted by Code § 20-49.1(B)(2).  The Acknowledgement of Paternity was *a judgment* establishing Wooddell's paternity of T.R.W. See Code § 20-49.1(B)(2).  Furthermore, the statement of facts here states that there was no evidence that the Acknowledgement of Paternity resulted from fraud, duress, or a material mistake of fact.  Courts must give "binding and conclusive" effect to voluntary statements of paternity that are executed, as was the case here, in the absence of fraud, duress, or a material mistake of fact – consistent with the intent of the General Assembly, as evidenced by the plain language of Code § 20-49.1(B)(2).

Code § 20-49.10, which concerns relief from legal determinations of paternity based on scientifically reliable genetic testing, must be interpreted in a manner that is harmonious with this "binding and conclusive" effect given to a voluntary statement of paternity that does not result from fraud, duress, or a material mistake of fact under Code § 20-49.1(B)(2).  Although Code § 20-49.10 permits a party to rely on scientifically reliable genetic testing to obtain relief from a judgment of paternity, the circuit court erred in granting Lagerquist such relief in this case, where the statement of facts establishes there was no fraud, duress, or material mistake of fact in the voluntary Acknowledgment of Paternity.

In some cases, Code § 20-49.10 might provide relief from a determination of paternity when there has not been a voluntary statement of paternity executed at the time of the child's birth.  See Code § 20-49.4 (discussing the types of evidence that a trial court may weigh in

- 11 -

establishing paternity); see also Code § 20-49.1(B)(3) ("[S]uch relationship may be established as otherwise provided in this chapter."). In such a circumstance, Code § 20-49.1(B)(2) would be inapplicable. In other cases, relief might not be available to a petitioner proceeding under Code § 20-49.10 because the individual who acknowledged paternity of the child did so knowing that he was not the father. In such a circumstance, the voluntary statement of paternity signed under Code § 20-49.1(B)(2) would remain binding regardless of the results of scientifically reliable genetic testing. See Code § 20-49.10 (stating that relief from a determination of paternity shall not be granted if the individual named as father "acknowledged paternity knowing he was not the father"). In still other cases, the results of scientifically reliable genetic testing might tend to establish, for example, that a voluntary statement of paternity resulted from a material mistake of fact under Code § 20-49.1(B)(2) *and* that the person named as the father on the voluntary statement of paternity is excluded from being the biological father under Code § 20-49.10. Cf. Beach v. Bellwood, 104 Va. 170, 185, 51 S.E. 184, 190 (1905) (explaining that a mistake of fact can be established when a written agreement varies from a party's intent by expressing "something different in substance from the truth"); Montgomery Mut. Ins. Co. v. Riddle, 266 Va. 539, 543, 587 S.E.2d 513, 515 (2003) (defining "material" as "of such a nature that knowledge of the item would affect a person's decision-making process" (internal quotation marks and citation omitted)). In such a circumstance, the voluntary statement of paternity would no longer be "binding and conclusive" under Code § 20-49.1(B)(2) *and* relief would be appropriate under Code § 20-49.10 if all of its other requirements are met.

In this particular case, however, (1) the parties executed a voluntary Acknowledgement of Paternity at the time of T.R.W.'s birth that listed Wooddell as the father, (2) neither party sought to rescind the Acknowledgement of Paternity within sixty days of signing it, *and* (3) the statement of facts in lieu of a transcript explicitly states that "[t]here was no evidence" that the

Acknowledgement of Paternity resulted from fraud, duress, or a material mistake of fact. To accord the "binding and conclusive" nature of a voluntary statement of paternity the full effect envisioned by the General Assembly, it logically follows that the parties' Acknowledgment of Paternity for T.R.W. was subject to collateral attack (such as under Code § 20-49.10) *only* upon sufficient proof of at least one of the conditions precedent that the General Assembly mentioned in Code § 20-49.1(B)(2) – fraud, duress, or a material mistake of fact. However, the statement of facts that was approved by the circuit court in this case establishes that there was no fraud, no duress, and no material mistake of fact – and, therefore, the statement of facts takes each of these conditions precedent completely off the table.

According to Rule 5A:7(a)(7), a written statement of facts is considered part of the record on appeal, provided that it is made part of the record pursuant to Rule 5A:8. Although Lagerquist's trial counsel objected to portions of the draft statement of facts prepared by Wooddell's counsel, the circuit court ruled on those objections pursuant to Rule 5A:8(d). Furthermore, Lagerquist's objections did not relate to the portion of the statement of facts indicating that the Acknowledgement of Paternity did not result from fraud, duress, or a material mistake of fact – and the circuit court, in ruling on Lagerquist's unrelated objections, did not alter or amend this particular language referring to the lack of fraud, duress, or a material mistake of fact in any way.[7]

It is well settled that an appellate court "is 'limited to the record of the proceedings which have taken place in the lower court and have been there settled and certified to us.'" Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 39 n.3, 645 S.E.2d 261, 268 n.3 (1997) (quoting Ward v. Charlton, 177 Va. 101, 107, 12 S.E.2d 791, 792 (1941)). "[W]e are bound by

_____

[7] Furthermore, the circuit court's letter opinions, which were issued prior to the preparation of the written statement of facts, contained no findings or discussion concerning the existence of fraud, duress, or a material mistake of fact.

- 13 -

the written statement of facts." <u>Gologanoff v. Gologanoff</u>, 6 Va. App. 340, 344, 369 S.E.2d 446, 448 (1988).

Thus, even viewing the evidence in the light most favorable to Lagerquist (as we must, since she was the prevailing party in the circuit court), the record on appeal fails to establish that the parties' Acknowledgement of Paternity for T.R.W. was invalid due to the existence of fraud, duress, or a material mistake of fact – none of which existed at the time of the parties' Acknowledgement of Paternity, according to the statement of facts. Therefore, given the specific circumstances and posture of this case, the parties' Acknowledgment of Paternity remained "binding and conclusive" under Code § 20-49.1(B)(2) because of the absence of fraud, duress, or a material mistake of fact.

Furthermore, the circuit court explicitly found that it was *not* presiding over a proceeding to determine parentage. <u>See</u> <u>Leitao v. Commonwealth</u>, 39 Va. App. 435, 438, 573 S.E.2d 317, 319 (2002) ("We defer to the trial court's interpretation of its own order."). Moreover, the circuit court did not take all of the steps required of a court when it considers a petition for relief under Code § 20-49.10 – such as appointing a guardian *ad litem* to represent the child's interests.

Given all of these circumstances in the record before us and considering the rather unusual facts of this case (including the statement of facts in lieu of a transcript, which establishes that the Acknowledgment of Paternity did not result from fraud, duress, or a material mistake of fact), it is clear that the circuit court erred when it found that Wooddell was a "non-parent" of T.R.W. and that Wooddell lacked standing to seek custody or visitation of this child.

### III. CONCLUSION

A voluntary written statement of paternity executed under Code § 20-49.1(B)(2) "shall be binding and conclusive unless, in a subsequent judicial proceeding, the person challenging the

statement establishes that the statement resulted from fraud, duress or a material mistake of fact." Here, the written statement of facts submitted in lieu of a trial transcript plainly states that there was no evidence that the parties' Acknowledgment of Paternity for T.R.W. resulted from fraud, duress, or a material mistake of fact. As the record on appeal, therefore, fails to establish that the Acknowledgement of Paternity resulted from fraud, duress, or a material mistake of fact, the parties' acknowledgment of Wooddell's paternity of T.R.W. remains "binding and conclusive" on the parties under Code § 20-49.1(B)(2).

Therefore, the circuit court erred when it found that Wooddell was a "non-parent" of T.R.W. and in holding that Wooddell, consequently, lacked standing to seek custody of (or visitation with) T.R.W. Accordingly, we reverse the circuit court's custody and visitation order and remand the matter to the circuit court for proceedings consistent with this opinion.

<u>Reversed and remanded.</u>