COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Alston, Decker and Senior Judge Willis


KATHERINE S. MURRAY

v.      Record No. 2100-12-2

KELLY A. SENSABAUGH AND
 B. LEE SENSABAUGH

KATHERINE S. MURRAY

v.      Record No. 2101-12-2

KELLY A. SENSABAUGH AND
 B. LEE SENSABAUGH

MEMORANDUM OPINION[*]
PER CURIAM
JUNE 10, 2014


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

(Christopher C. Graham; Eustis & Graham, P.C., on brief), for
appellant.

(Annie Lee Jacobs; Michael J. Hallahan, II, Guardian *ad litem* for the
minor child; Parker, McElwain & Jacobs, P.C., on brief), for
appellees.


In separate appeals, appellant appeals the trial court's denial of her motions to strike the

evidence with respect to the appellees' petition for adoption and motion to terminate appellant's

visitation rights with her biological child, K.A.M.[1]  Appellees have filed a motion to dismiss the

appeal of the trial court's "Order Regarding Adoption" on the basis that the order from which

appellant appealed was not a final order.  For reasons stated below, we grant the motion to

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The two appeals were consolidated on May 6, 2013.  Record No. 2101-12-2 is the
appeal of the adoption decision, and Record No. 2100-12-2 is the appeal of the visitation
decision.

dismiss in the adoption matter and summarily affirm the decision of the trial court in the visitation matter.

I.

We turn first to appellees' motion to dismiss appellant's first assignment of error -- the one concerning the petition for adoption -- on the basis that we lack jurisdiction to consider it. In the first assignment of error, appellant contends the trial court

> erred in denying [her] motion to strike the evidence with respect to the "Petition for Adoption" when there was insufficient evidence under the clear and convincing standard to support a finding that [a]ppellant had abandoned the child as contemplated by Code . . . § 63.2-1202(H) when [a]ppellant presented evidence that in addition to having visited the child on at least four occasion prior to March 28, 2011, [a]ppellant made several attempts to have contact with the child between March 28, 2011 and November 9, 2011, during the six month period [a]ppellees claim that no such attempts were made, and when testimony revealed that [a]ppellees denied visitation to [a]ppellant during this six month period of time.

We agree with appellees that the trial court's ruling on the petition for adoption was not an appealable final order. The Court of Appeals of Virginia has subject matter jurisdiction over "any final judgment, order, or decree of a circuit court involving . . . [t]he control or disposition of a child; . . . [and] [a]doption under Chapter 12 (§ 63.2 1200 *et seq*.) of Title 63.2; [and] any interlocutory decree . . . entered in [such] cases . . . adjudicating the principles of a cause." Code § 17.1-405(3)(e) & (g); (4)(ii). "[A] final order or decree is one that disposes of the entire matter before the court, giving all the relief contemplated and leaving nothing to be done by the court except the ministerial execution of the court's order or decree." McLane v. Vereen, 278 Va. 65, 70, 677 S.E.2d 294, 297 (2009). If "further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree is not final but interlocutory." Brooks v. Roanoke Cnty. Sanitation Auth., 201 Va. 934, 936, 114 S.E.2d 758, 760 (1960). Orders retaining "jurisdiction to reconsider the judgment or to address other matters still pending

in the action" lack finality. <u>Super Fresh Food Mkts. of Va. v. Ruffin</u>, 263 Va. 555, 561, 561 S.E.2d 734, 737 (2002).

Here, the trial court's "Order Regarding Adoption," entered on October 18, 2012, was not a final decision in the case. The order referred the case to the Albemarle County Department of Social Services "to conduct an investigation and prepare a report pursuant thereto, [and] file said report with th[e] Court . . . within 60 days of the entry of this Order . . . ." It did not dispose of the "entire matter before the court" and give appellees the relief sought.

Furthermore, the order is not an interlocutory order that "adjudicates the principles of a cause" because it "does not adjudicate[] the underlying cause" in the adoption proceeding by granting or denying the adoption petition. <u>See</u> <u>de Haan v. de Haan</u>, 54 Va. App. 428, 439, 680 S.E.2d 297, 303 (2009) (citation and internal quotation omitted). It did not "respond to the chief object of the suit." <u>Pinkard v. Pinkard</u>, 12 Va. App. 848, 852, 407 S.E.2d 339, 341-42 (1991).

Accordingly, as this Court is without jurisdiction to entertain the appeal of the trial court's "Order Regarding Adoption," we dismiss that appeal.

II.

With regard to the trial court's decision terminating appellant's visitation with K.A.M., appellant contends the trial court erred in denying her motion to strike because appellees presented

> insufficient evidence under the clear and convincing standard to support a finding that it would be in the child's best interest to terminate visitation because there was no finding by the trial court that [a]ppellant was an unfit parent, and no evidence was presented to support a finding that she abused or neglected the child.

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." <u>Congdon v. Congdon</u>, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003). K.A.M. was born on October 10, 2007, to appellant and Brandon Murray, son of appellee Kelly Sensabaugh. Appellee Kelly

Sensabaugh frequently cared for the child and took care of him financially. The juvenile and domestic relations district court awarded custody to appellees on June 10, 2010. Appellant initially appealed that decision, but ultimately agreed that appellees would have custody of K.A.M. and that appellant would have visitation rights upon satisfying certain conditions. The trial court entered an agreed order on November 8, 2010, granting custody to appellees and reciting the conditions of visitation.

On July 11, 2012, appellee Kelly Sensabaugh filed a motion to terminate her son's and appellant's visitation on several grounds: (1) they had failed to satisfy the conditions of visitation, (2) appellant had not requested visitation with the child from November 2011 until July 2012, and (3) the child had not seen either parent for fifteen months. After hearing evidence in support of the motion on September 7, 2012, the trial court granted it.

While appellant contends the trial erred in denying her motion to strike, she does not assign error to the trial court's finding that appellant and the biological father "abandoned the parent/child relationship."[2] Instead, she argues the trial court erred because the evidence failed to prove she was an unfit parent or abused or neglected K.A.M.

"'[T]he right of the parents in raising their child is a fundamental right protected by the Fourteenth Amendment.'" Stadter v. Siperko, 52 Va. App. 81, 88, 661 S.E.2d 494, 498 (2008) (quoting Williams v. Williams, 24 Va. App. 778, 783, 485 S.E.2d 651, 654 (1997), aff'd as modified, 256 Va. 19, 501 S.E.2d 417 (1998)); see Griffin v. Griffin, 41 Va. App. 77, 82, 581 S.E.2d 899, 901 (2003) ("The Due Process Clause protects the 'fundamental right of parents to

---

[2] Accordingly, we limit our consideration to the arguments framed by the assignment of error. First Nat'l Bank of Richmond v. William R. Trigg Co., 106 Va. 327, 341, 56 S.E. 158, 163 (1907) (noting that an assignment of error is designed to "point out the specific errors claimed to have been committed by the court below[,]" and thereby "enable[s] the reviewing court and opposing counsel to see on what points plaintiff's counsel intends to ask a reversal of the judgment or decree, and to limit discussion to those points"). See also Whitt v. Commonwealth, 61 Va. App. 637, 646-47, 739 S.E.2d 254, 258-59 (2013).

make decisions concerning the care, custody, and control of their children.'" (quoting Troxel v. Granville, 530 U.S. 57, 66 (2000))). Thus, "[t]he court shall give due regard to the primacy of the parent-child relationship" when determining the "best interest of the child" in a custody or visitation dispute between a parent and a non-parent. Code § 20-124.2. See Williams, 24 Va. App. at 780-85, 485 S.E.2d at 652-54. In the adjudication of such a dispute, "'the law presumes that the child's best interest will be served when in the custody of its parent.'" Florio v. Clark, 277 Va. 566, 571, 674 S.E.2d 845, 847 (2009) (quoting Bailes v. Sours, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986)).

> "Although the presumption favoring a parent over a non-parent is a strong one, it is rebutted when certain factors are established by clear and convincing evidence. We have held that such factors include: (1) parental unfitness; (2) a previous order of divestiture; (3) voluntary relinquishment; . . . (4) abandonment[; and (5)] special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent, or parents."

Id. (quoting Bailes, 231 Va. at 100, 340 S.E.2d at 827 (citations and internal quotation marks omitted)).

Here, because appellant had voluntarily relinquished custody of K.A.M. to appellees, she lost the presumption in her favor as a biological parent. See Shortridge v. Deal, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983) ("Once the relinquishment of custody is established, the natural parents who seek to regain custody must bear the burden of proving that such change is in the child's best interests."). Coupled with the uncontested finding that appellant abandoned K.A.M., the trial court properly assessed appellees' motion to terminate visitation on the basis of whether it was in K.A.M.'s best interests. See Florio, 277 Va. at 571, 674 S.E.2d at 847. The burden of proving visitation was in K.A.M.'s best interests lay with appellant. See id. (citing Shortridge, 224 Va. at 594, 299 S.E.2d at 503).

Clear and convincing evidence supported the trial court's decision that continued visitation with appellant was not in K.A.M.'s best interests. Prior to appellees seeking custody of the child in May 2010, appellant and Murray often drove the child without a valid driver's license. They also regularly asked appellees for money and brought the child to them dirty, unwell, injured, and/or hungry. The child referred to appellant by name and not as "mom." The November 2010 custody and visitation order required appellant to complete a parenting class and to obtain a driver's license. Appellant did not complete the parenting class until November 2011, and did not obtain a driver's license until March 2012.

Appellant did not visit the child after March 28, 2011, and did not call or send cards to the child after March 28, 2011. After March 28, 2011, K.A.M. never spoke of appellant, but referred to appellees as "Mom" and "Dude." Appellee Kelly Sensabaugh stated that appellant had posed in "vulgar photos" dressed in "scantily clad" attire and holding weapons and had permitted the photographs to be posted on a commercial website. She had also posted information on the internet indicating that her job was selling "sex toys."

The director of the preschool attended by the child testified she had observed K.A.M. from the time he was two and a half years old until he was five years old. During that time, she had never met appellant or Murray. K.A.M. arrived at school well dressed and neatly groomed and appeared "very happy." The director noted that appellees had enrolled the child and paid for his attendance at the preschool.

One of the preschool teachers corroborated the director's testimony. She stated that she had never met appellant, but observed that K.A.M. appeared to have a "close bond" with appellees. Another teacher confirmed that the child "was always excited" to see appellees.

Appellant acknowledged that appellee Kelly Sensabaugh "had done a great job taking care of [K.A.M.]." While appellant stated she never intended to abandon the child, she agreed to

place him with appellees because "he was better off living with [them]." She admitted that, even though she was licensed as a certified nursing assistant in 2009, and had spent time in 2010 training to become a massage therapist, her mother financially supported her from 2010 through 2011. Appellant cited no employment until shortly before the September 2012 hearing. She stated that she "was starting a job as a CNA [certified nursing assistant] about the time of the . . . hearing."

As "the evidence supports the conclusion that the child's best interests would be served by the disposition made by the trial court," Florio, 277 Va. at 573, 674 S.E.2d at 848, we summarily affirm the trial court's decision. See Rule 5A:27.

Record No. 2100-12-2 -- Affirmed.

Record No. 2101-12-2 -- Dismissed.